## THE EAST RIVER NATIONAL BANK, Respondent, *v.* FRANCIS N. GOVE, Appellant.

*It seems*, that where a referee makes a finding of fact in accordance with the request of a party, the latter cannot dispute or question it on appeal.

Where one pays a debt due by him to a bank upon the demand of an officer thereof, whom he finds employed in its business, to said officer, over its counter, without knowledge that the officer's authority is so limited that he is not authorized to receive the money, it is a payment to the bank and the latter is bound thereby.

Plaintiff, to the knowledge of defendant, a customer, employed in its bank a paying and a receiving teller, the general duty of the latter being to receive moneys paid or deposited. In his absence other officers or clerks acted in his place. Defendant having overdrawn his account by mistake, received a letter from the paying teller requesting him to call; he went to the bank, and at the request of the paying teller paid him over the counter the amount required to rectify the error; this was not entered on the books of the bank. It did not appear that the receiving teller was in the bank.

In an action to recover the amount overdrawn, *held*, that the bank was bound by the payment.

*Manhattan Company* v. *Lydig* (4 J. R., 377) distinguished; *Thatcher* v. *Bank of State of N. Y.* (5 Sand. [S. C.], 121) limited and distinguished.

(Argued May 11, 1874; decided September term, 1874.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, reversing a judgment in favor of the defendant entered upon the report of a referee, and granting a new trial.

This action was brought to recover $1,100, which plaintiff claimed was credited to the defendant upon its books by mistake and drawn out by him upon his checks.

There was no controversy upon the trial about the mistake, but the only question of fact litigated was whether the defendant had repaid to the bank the eleven hundred dollars. The referee found that he had made the repayment and reported in his favor. The General Term reversed the judgment both upon questions of fact and of law.

The substance of the evidence is stated in the opinion.

*William A. Boyd* for the appellant. Defendant was justified in assuming that the teller was authorized to demand and receive the money. (*Hotchkiss* v. *Artisan's Bk.*, 42 Barb., 517; *Van Lennon* v. *Kingston Nat. Bk.*, 6 Lans., 373.) Plaintiff, while retaining the eighty-five dollars charged against defendant, cannot deny the receipt of the money; it cannot take the benefit of the teller's act without its burdens. (Paley on Agency, 172; Story on Agency, § 250; *Benedict* v. *Smith*, 10 Paige, 127; *Corning* v. *Southerland*, 3 Hill, 552; *Moss* v. *R. Lead M. Co.*, 5 id., 137; *Dexter* v. *Adams*, 2 Den., 646; *Lowestein* v. *McIntosh*, 37 Barb., 251; *Bill* v. *Shipley*, 33 id., 610; *F. L. and T. Co.* v. *Walworth*, 1 N. Y., 433; *Cobb* v. *Dows*, 10 id., 335; *Bennett* v. *Judson*, 21 id., 238; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 id., 88; *Ferguson* v. *Hamilton*, 35 Barb., 443.)

*E. E. Anderson* for the respondent. The payment of the money to the paying teller was not a payment to the bank. (*Thatcher* v. *Bk. of N. Y.*, 5 Sandf., 121; *Manhattan Co.* v. *Lydig*, 4 J. R., 377; *Newark I. Rub. Co.* v. *Bishop*, 3 E. D. S., 48.)

Earl, C. The General Term having reversed the judgment entered upon the report of the referee, both upon questions of fact and law, we have the same right to consider questions of fact which the General Term had. (Code, § 272; *Westerlo* v. *De Witt*, 36 N. Y., 340.) We cannot sanction the reversal upon questions of fact if the evidence was of such a conflicting character that the referee might have found either way. He had the benefit of seeing and hearing the witnesses, and thus had opportunities of judging of their credibility which we cannot have. His conclusion is entitled to great respect, and unless we can see that he committed manifest error in weighing or construing the evidence, we should not disturb his decision.

Upon the trial it appeared that in January, 1866, one Coe deposited in the bank $1,100, and that this sum was, by mis-

take, credited to the defendant, and that before the mistake was discovered he had drawn it out upon his checks. The only question of fact litigated upon the trial was, whether the defendant had repaid this sum to the bank, and upon this question the evidence was quite conflicting. It appeared that the mistake was discovered by some of the officers in the bank in June or July, 1866, and that defendant's attention was called to it, and that he promised to make it good. Defendant testified that on the 28th day of August, 1866, the paying teller of the bank wrote him a letter, which he produced, requesting him to call and see him at his earliest convenience. This letter was written upon the paper of the bank, with the bank's printed heading. He went to the bank, and there the paying teller requested him to make good the mistake, and he then paid him $1,015 in money over the counter. The next day he called at the bank again and asked the book-keeper, who for some considerable time had known of the mistake, what his balance was, and being informed that it was eighty-seven dollars and sixty-one cents, he drew that by his check, and his account was then balanced, and his pass-book and vouchers were delivered to him. He found his account charged with eighty-five dollars, the difference between $1,100 and $1,015, the amount which he had paid the day previous. He found among the vouchers delivered to him the following paper :

" Charge Francis N. Gove $85, being the amount
    of difc. bet................................. 1100
                                                  1015

*Aug.* 28, 1866.                                   85 "

I understand the letters "difc. bet." to indicate the difference between the $1,100 and $1,015. This voucher was in the hand-writing of the paying teller. The letter and voucher, both dated August twenty-eighth, afford very strong confirmation of the claim that the $1,015 was paid on that day, as positively testified to by the defendant. Upon the

other side, the receiving teller and book-keeper of the plaintiff testified, that so far as they knew, that sum was not paid to the bank by the defendant, and that the books of the bank did not show any deposit of that sum on that day or about that time. The paying teller testified that defendant did not pay him that sum, and tried in some way, entirely incomprehensible to me, to explain how he came to write the letter and make the voucher. But it is clear that it was understood in some way in the bank that the payment was made as claimed by defendant. The receiving teller testified that he heard the book-keeper say that defendant had made the mistake good. If it had not been so understood, how came the eighty-five dollars to be charged, and how came the account to be balanced and the balance paid on the twenty-ninth of August? I am, therefore, of opinion that there was sufficient evidence that defendant paid the $1,015, as claimed by him.

But the plaintiff cannot well dispute this, as its counsel at the trial requested the referee to find as follows : " That on the 28th day of August, 1866, the defendant handed to John Van Orden, the paying teller of the East River National Bank, $1,015 ; John Van Orden thereupon made out a charge against defendant's account for eighty-five dollars, which is the exhibit in this action marked D, No. 1, and drew eighty-five from defendant's account; defendant requested John Van Orden to deposit this money to his credit in the bank. At this time defendant knew that Van Orden was plaintiff's paying teller," and the referee so found. Having requested the referee to make the finding, he cannot now complain of it. Hence there is no difficulty about the facts.

But plaintiff claims that upon these facts there was not a payment to the bank ; that payment to the paying teller was not a payment to the bank without proof that the bank actually received or had the benefit of the money. There were in this bank, besides the cashier and book-keepers, a paying teller and a receiving teller ; the general duty of the former being to pay the moneys of the bank, and of the latter to receive

money paid to or deposited in the bank. In the absence of the receiving teller, other clerks and officers of the bank acted in his place. The defendant had for some years been a dealer with the bank, and he knew that there were a paying and a receiving teller. There was no proof that the receiving teller was in the bank on the twenty-eighth day of August, when the defendant made the payment. For aught that appears the paying teller was then the highest officer of the bank present. The defendant had several times been spoken to to make the mistake good. He received the letter from the paying teller and went to the bank, and, upon his request, paid him the money over the counter. There was no proof that the paying teller was not, in fact, authorized to receive this money. He testified that he was not accustomed to receive money from depositors. But this payment was not a deposit. It was a payment of a debt due the bank; there was no proof that defendant had any reason to believe that Van Orden was not authorized to receive this money, except the fact that he was the paying teller. Under such circumstances, I hold that the payment to the paying teller was a good payment to the bank. The defendant went to the bank, he found behind the counter the paying teller who asked him to pay a demand the bank had against him, and he then paid it. It would be a very inconvenient and unreasonable rule to hold that a bank was not bound by such a payment. If this payment was not binding upon the bank, it would not have been if Van Orden had declared to the defendant that he was authorized to receive it; and if every clerk then in the bank except the cashier had, upon the inquiry of the defendant, made the same declaration. If he had gone to the bank to pay a note and the paying teller had gone to the vault and got the note, taken the money and surrendered up the note, upon the same principle such a payment would not have bound the bank. Banks must be held responsible for the conduct of their officers within the scope of their apparent authority. When one goes into a bank and finds behind the counter one of its officers employed in its business, and upon

his demand pays a debt due the bank in good faith, without any knowledge that the officer's authority is so limited that he has no right to receive it, he must be protected, and the bank must be bound by the payment.

The learned counsel for plaintiff has called our attention to two cases to sustain his claim that this was not a good payment to the bank. (*Manhattan Company* v. *Lydig*, 4 J. R., 377; *Thatcher* v. *Bank of State of New York*, 5 Sandf. [S. C.], 121.) In the former case the book-keeper of the bank was also, out of banking hours, employed by the defendant to post his books, and from time to time defendant sent money by him to be deposited in the bank, and the book-keeper, although he credited the money to defendant upon some of the books of the bank, appropriated it to his own use. It was held that the book-keeper was the agent of the defendant to make the deposits, and that the defendant and not the bank was responsible for his fraud. SPENCER, J., says: "Brown, the book-keeper, was the servant of the plaintiffs when in their employ, in their office, and for acts there done the plaintiffs are answerable; that for acts not done in execution of the authority given him by the plaintiffs they are not chargeable. In making deposits for the defendant, Brown acted, not as the servant of the plaintiffs, but as the agent of the defendant." In *Thatcher* v. *The Bank of the State of New York*, the plaintiff, the drawer of a draft payable at the bank, which had been accepted by the drawee, a short time before the draft became due, went to the bank and left with the paying teller money for the purpose of paying the draft when presented. The draft was presented, was not paid, and was protested for non-payment. Then the drawer sued the bank to recover damages for not paying the draft, and it was held that he was not entitled to recover, and this decision is said to have been affirmed in the Court of Appeals. It was held that the drawer was not the proper party to sue, but that the acceptor was the only person who could sue, and upon this ground alone the plaintiff could properly have been defeated. But it was also held that the bank was not bound by the payment

to the paying teller, who had no right by virtue of his office to receive money, that duty being devolved upon the receiving teller. Much stress was laid, in the opinion, upon the fact that the plaintiff was not a dealer with the bank, that he was a mere stranger who came to the bank, and for his own convenience left with the paying teller money to be applied upon his draft, when it should be presented for payment; the bank in no way receiving any benefit from the transaction. It was held, under such circumstances, that the paying teller was not the agent of the bank to take the money and make the payment. The facts of that case were unlike the facts of this. Here the defendant was a dealer with the bank, and paid the money upon request to satisfy a debt which he owed to the bank. I am not prepared to assent to all that was said in the opinion in that case; and although it is said that the decision was affirmed in the Court of Appeals, it may have been upon the first ground, that the plaintiff was not the proper party to sue.

If I am right thus far, the defendant had, on the 28th day of August, 1866, discharged his liability to the bank on account of the mistake. He testified that afterward, in October, Van Orden came to him and said the book-keeper in the bank was overhauling his accounts and that there was an error in his accounts arising out of the Coe deposit, and gave him $1,100, and requested him to deposit it in the bank; that he denied that there was any error, but said that he would take the money and make the deposit; that he did deposit it, and subsequently drew it out again. This transaction is denied by Van Orden in his evidence; and we are unable to say which version of it the referee believed. But if we assume that the defendant gave the true version, then it would seem that Van Orden appropriated to his own use the money paid August twenty-eighth, and took this mode of covering up his misconduct; but this transaction created no new liability of the defendant to the bank, and did not renew the old one that had been discharged.

I am, therefore, of opinion that the order of the General

Term should be reversed and the judgment entered upon report of referee affirmed with costs.

All concur.

Order reversed, and judgment accordingly.