## THE SECOND NATIONAL BANK OF WASHINGTON

*v.*

## AVERELL.

EVIDENCE; BANKS AND BANKING; AGENCY.

1. Where in an action at law the question to be determined is what was done by the defendant under certain circumstances, testimony to show what he might have done under other circumstances is irrelevant.

2. A, in the office of a bank after banking hours, presented to D, the paying teller, who also occasionally received deposits in the absence of the receiving teller, a post-dated check, and D promised to pay the check when due and enter it as a deposit to the credit of A, who not being a depositor was required to write his name in the signature book. The cashier was in the bank at the time of the transaction, and later in the day learned that the check was in D's possession. On the morning of the day the check became due, the drawer's deposit was sufficiently large to pay it, but at the close of banking hours his account was overdrawn, and the check was protested for non-payment. In a suit by A against the bank for money had and received, it was *held* that the bank was liable.

No. 183.    Submitted December 14, 1893.—Decided March 5, 1894.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, holding a law term, upon a verdict for the plaintiff, in an action for money had and received. *Affirmed*.

The COURT in its opinion stated the case as follows:

This is an action for money had and received. On May 16, 1884, one George H. Levis, in the city of Washington, a depositor of the defendant bank, executed and delivered two checks on said bank, in the usual form, for $1,000 each, payable to the order of M. D. Helm, who, for value, on the same day indorsed them to the plaintiff Averell. One of these checks bore date as of the 18th of May. The check dated May 16th was paid by the bank on the same day after

its closing hour, and this suit is to recover the amount of the second or post-dated check, with $2.05 protest fees.

The testimony of the plaintiff Averell, which was not contradicted, is substantially as follows:

" I had dealings with the defendant bank in reference to said checks on the 16th day of May, 1884. I received that check and another check for $1,000, one bearing date the 16th day of May, 1884, and the other bearing date the 18th day of May, 1884, from M. D. Helm, about 3 o'clock P. M. I went to the defendant bank to get them cashed, and arrived there about 3.30 P. M. The outside door of the bank was closed, but upon my knocking it was opened by the watchman of the bank and I was invited into the rear room occupied by the bank, through a door leading therein from the hall. I went into the rear part of said room occupied by the bank, and from there into a private compartment partitioned off from the main room of the bank; this private room was used by, and in connection with, and contiguous to the bank. While there I was approached by Mr. Robert M. Drinkard, one of the officers of the defendant bank, with whom I was acquainted, and he asked me what he could do for me. In reply I stated that my nephew was very ill in New York and that I was anxious to leave the city that evening to visit him and needed the money for that purpose. At his suggestion I indorsed the checks which I had received from Helm, as I have stated, and presented them to him for payment. Mr. Drinkard received them and immediately went to the counter of the bank, a few steps from the private apartment where I was, and returned with $1,000 in payment of the check dated May 16th, 1884. He then called my attention to the fact that the check dated May 18th, 1884, was dated May 18th, which fell on Sunday, and would not be due and payable until Monday, May 19th. I told Mr. Drinkard that I would not be in the city on the 19th of May, and he then said that he would place it to my credit and that I could check against it. Thereupon, at his suggestion, I wrote my name in the signature book of the bank.

"Mr. Drinkard retained the check, and I left it with him with the distinct understanding that an account was opened between the bank and myself on the said check, and that the same was placed to my credit in the account.

"On or about the 23d day of May, 1884, I returned to the city of Washington and went to the bank for the purpose of getting some money, and while I was writing a check for it Mr. Drinkard called me to the counter and presented me with the check, with the protest attached thereto, and stated that it had been protested, and that there was due and payable to the bank the sum of $2.05 for the said protest; which I paid, and received the check and the certificate of protest.

"On the first visit the bank was closed for the day's business, but was opened to oblige me by admitting me to the rear entrance by a side door leading from the main hall. Mr. Drinkard and other officers of the bank were still busy with their books and papers when I arrived there."

It was further proved that on May 19 (the day of the maturity of the check in question) at the opening of the bank there was to the credit of Levis the sum of $5,126.48 subject to his checks. On that day the bank paid $3,928.33 on other checks of Levis, some of them bearing date that day, one of these being for $2,000. It also reserved the amount of two drafts on New York which it had discounted and forwarded for collection, one for $790.10, due May 17, the other for $801.20, due May 19, the latter being dishonored at 3 o'clock on that day.

The bank learned of the non-payment of the draft maturing May 17th by mail on the morning of the 19th about 9 o'clock. It learned of the non-payment of the second about its closing hour on the 19th. These drafts had been placed to the credit of Levis by the bank as cash; and the bookkeeper had been instructed by the cashier not to let his account be drawn below the amount thereof.

The bank had, besides the paying teller, Drinkard, a receiving teller and a collection clerk, the window of each

of whom at the bank counter in front being indicated by a sign. Drinkard had been both paying and receiving teller up to 1879. Between that time and the date of the transaction in controversy, he had, with the knowledge and acquiescence of the cashier, occasionally received deposits and opened up new accounts by taking the signatures of depositors in the "signature book." It was shown also that signatures were sometimes taken for the purpose of identifying that upon which the draft is cashed, or to preserve an address, &c.

Plaintiff had no account with the bank, and his name nowhere appeared on its books as a depositor. The usual course of business at the bank for depositors was to deliver post-dated or undue checks to the collection clerk, and those payable at once to the receiving teller to be charged to the drawer and credited to the depositor.

The small room in which Drinkard met plaintiff and received the check was separated from the main office by a wire partition, in which there was a door and a small arched opening for the passage of papers. It had a door also communicating with the president's room. Drafts had been cashed and deposits received in this room occasionally, after the regular closing hour; and it was customary at such times to transact business there with such customers as the bank was willing to accommodate.

The case has been tried three times in the special term, and twice, on appeal, in the general term of the Supreme Court of the District of Columbia. On the first trial the jury were directed to find for the defendant; but the judgment was reversed. 6 Mackey, 358.

On that trial the only evidence regarding the protest of the check on the 19th of May was the certificate of the notary that it had been presented at the bank for payment at the request of the bank. The trial justice was of the opinion that Drinkard was the agent of the plaintiff in the transaction and not of the bank. The court, in general term, reversed this judgment in a short opinion, in which

great stress was laid on the fact that the check was protested at the request of the bank, and that this was a ratification of the paying teller's act in receiving it for deposit to plaintiff's credit.

On the second trial proof was offered by the defendant tending to show that after 3 P. M. on Monday, Drinkard, accompanied by the notary, carried the check to the cashier, and asked him what to do with it, and that the cashier suggested to him that he had better hand it to the notary, in order to save the rights of the parties and hold the indorser; in other words, that the protest was made for the benefit of the plaintiff. The trial justice, following, as he supposed, the opinion of the general term, submitted the case to the jury to find from the evidence whether the act of Drinkard had been recognized or ratified by the defendant, and refused an instruction, asked by defendant, to the effect that if the jury should believe the evidence above mentioned to be true, they would regard the protest as no evidence of ratification by the bank of the act of Drinkard; and further would find that, upon the evidence in the case, Drinkard was to be considered the agent of the plaintiff, and not of the bank. The jury found for the plaintiff, and, on appeal, the general term held that the refusal of said instructions was error, and again reversed the judgment. 8 Mackey, 246. The court was of opinion that the additional evidence, explaining the protest, made a radical change in the case and took it out of the ruling upon the first appeal.

On this, the third trial (and for the first time), testimony was introduced respecting the time when defendant's cashier first learned of the possession of the check by Drinkard. The cashier was called by the plaintiff and testified as follows, as appears from the notes of his testimony in the bill of exceptions:

Q. When did you first learn of this check?—A. I do not remember. I think I knew of it though before the 19th. I knew that the check was there on Mr. Drinkard's counter.

Q. What did he tell you about it?—A. I do not know that

he told me anything of the fact. I knew that he had it in his possession.

Q. You knew that it was in his possession?—A. Yes, sir.

Q. Did you know that General Averell's signature was upon the book of the bank?—A. No, sir; that did not come to my knowledge until afterwards.

Q. At what time?—A. I cannot tell—I think when the inquiry began to be made there afterwards about the check; I do not think I had any knowledge; I do not remember that I had any knowledge of General Averell's signature being upon the book at all.

Q. Well, can you state on what date you learned that Mr. Drinkard had it?—A. I think that I knew that probably on the 16th; I think that I knew of it on the evening of the 16th; I had knowledge that he had that check in his possession.

Q. On his desk?—A. Yes, sir.

Q. Did Mr. Drinkard tell you from whom he had received it?—A. I think so; yes, sir.

Q. That he had received it from General Averell?—A. Yes, sir.

Q. And did you know why he had it?—A. No, sir; I knew nothing of the fact that he had gotten a check cashed there that evening.

Q. He had one check cashed, and Mr. Drinkard had the other?—A. Yes, sir.

Q. You knew that the check did not belong to Mr. Drinkard, did you not?—A. I did not think of it that way.

Q. Did you know at that time that that check was to be presented on the 19th?—A. No, sir; I do not think I did, sir; it was a post-dated check that he had in his possession.

Q. Did you know what he had it there for?—A. The inference was that it was there to be paid, if I had thought of it at all."

Upon the close of the testimony, the defendant prayed the court to instruct the jury that upon the whole evidence the plaintiff was not entitled to recover. This was refused, and the defendant excepted.

At the request of defendant the court gave the following special instructions to the jury; the first is the same for the refusal of which the judgment had been last reversed.

1. " If the jury believe from the evidence that Mr. Drink-ard, the paying teller of the bank, after 3 o'clock on May 19, when there was no money to Levis' credit, as shown by the proof, in company with General Balloch, the notary, consulted Mr. Swain, the cashier, as to whether the check should be protested, and that the cashier stated to him that in order to save the rights of the parties to the check he had better have it protested, and Mr. Drinkard handed the check to the notary to protest it, that is not sufficient evidence of a ratification by the bank of the act of Drinkard, and will not enable the plaintiff to recover."

2. " If the jury believe from the evidence that the cashier of the defendant bank on the evening of the 16th of May, 1884, knew that the paying teller had possession of the check in question, and that it so remained in his possession, but the cashier did not know of any agreement or arrangement between the paying teller and the plaintiff, to the effect that said check should be placed to the credit of the plaintiff on the following Monday morning, subject to his check, then the same is not evidence from which an acceptance of said check by the bank may be inferred, and will not entitle the plaintiff to recover."

The court then gave the following special instruction at the request of the plaintiff:

" If the jury believe from the evidence that the check in question, bearing date on the 18th day of May, 1884, was deposited by the plaintiff with the defendant bank, and by it received through its officer, Drinkard, on the 16th day of May, 1884, to be placed to the plaintiff's credit, and further that the bank by its cashier knew of such transaction and assented thereto, and the same was in defendant's possession at the opening of the said bank on the 19th day of May, 1884, and that there were then sufficient funds to the credit of the drawer in said bank to pay the same, the plaintiff is

entitled to recover, and the measure of his recovery should be the face of the check, one thousand dollars, and two dollars and five cents protest, with interest from the 23d day of May, 1884."

The court also gave another instruction in obedience to the opinion of the general term on the last appeal as follows: " Upon the evidence in the case, Drinkard, the paying teller, in receiving the check, is to be considered the agent of the plaintiff, and not the agent of the bank."

But this instruction, in order to harmonize with the instruction given on behalf of the plaintiff, was accompanied by this qualification:

" This is true, and a correct statement of the law, that in receiving it, he was the agent of the plaintiff, and not the bank; yet Mr. Swain had the power and the right to convert Mr. Drinkard's act into the act of the bank; and the question for you to determine is, as I have said before, whether he did so or not, and in determining that question, you are to take into consideration all the facts and circumstances in the case."

To the addition of the foregoing qualification, as well as to the grant of the plaintiff's · special prayer aforesaid, the defendant excepted.

The jury found for the plaintiff, and judgment was rendered in his favor for the full amount of the sum claimed, with interest. From this judgment the appeal has been duly prosecuted.

*Mr. William F. Mattingly* for the appellant:

1. The plaintiff, as endorsee of the check, sues the defendant bank for money received by the defendant for the use of the plaintiff. Clearly as such·he cannot maintain the action. There is no privity of contract between the holder of a check and the bank on which it is drawn. The bank owes no duty and is under no obligation to the holder, and he cannot sue the bank for refusing payment in the absence of proof that the check was accepted by the bank or

charged against the drawer. *Bank of the Republic* v. *Millard*, 10 Wall., 152 ; *First Natl. Bank* v. *Whitman,* 94 U. S., 343. The plaintiff, therefore, necessarily claims that the check in suit was by the action of the paying teller, claimed to be ratified by the cashier, accepted by the bank. This action is not for the breach of any other contract by the bank. It is not for the breach of any promise to accept on the 19th or to collect on the 19th, and then to place to plaintiff's credit, but is solely based upon an alleged acceptance by the bank on the 16th. There is no evidence of an acceptance of the check by the bank. It was left with an employee of the bank after business hours, when the bank was closed, who would not have been the proper person to have received it even during business hours. Under the circumstances, Drinkard, the paying teller, was the agent of the plaintiff and not of the bank. The check might as well have been left with the janitor or any other employee of the bank. No banking corporation would be safe if such acts could be construed an acceptance of commercial paper by a bank. *Morrow* v. *James*, 3 Mackey, 27 ; Ib., 4 Mackey, 59 ; Morse on B. & B., Secs. 168*d, b,* 378, 379, 174*a* ; *Thatcher* v. *Bank*, 5 Sand., 122 ; 19 D. C., 246 ; *Manhattan Co.* v. *Lydig*, 4 John., 377 ; *Bank* v. *Bank*, 52 Barb., 592 ; *Pickle* v. *Muse*, 17 Am. St., 900 ; *Bank* v. *Bank*, 19 Am. R., 181 ; *Bank* v. *Bank*, 23 Am. R., 129 ; S. C. 67 N. Y., 458 ; *Bullard* v. *Randall*, 1 Gray, 605 ; *Wyman* v. *Bank*, 14 Mass., 58 ; *Terrell* v. *Bank*, 12 Ala., 502 ; *State* v. *Bank*, 6 Sm. & M., 218 ; *Bank* v. *Steward*, 37 Me., 519.

2. Mr. Swain, the cashier, on cross-examination, was asked if Mr. Averell had brought that post-dated check on the 16th or 17th would it have been received as a deposit from him as a depositor, and an account opened, if it had been presented at the bank during business hours. And the offer was made to prove that under these circumstances he would not have been received as a depositor of the bank. The court refused to permit the testimony to be given. This was clearly an error. A bank has the undoubted

right to reject or accept a depositor. Morse on B. & B.,
Sec. 178. The plaintiff's case depends upon the claim that
his acceptance as a depositor was an acceptance of the check
by the bank. It was material to the defense to show
that what was claimed to have been done by an unauthorized
employee after business hours, would not have been done
by an authorized employee during business hours.

3. The defendant, the evidence being closed, prayed the
court to instruct the jury that upon the whole evidence the
plaintiff was not entitled to recover. This the court re-
fused. This prayer was based upon the fact that no evi-
dence had been introduced to show any acceptance of the
check by the bank. Clearly the paying teller had no right
to promise on the 16th that a check not presentable until
the 19th should be paid on that day. Under the law he re-
ceived the check as the agent of the plaintiff and not of the
bank. The only difference in the proofs in this case and in
the last trial reviewed and decided by the court in general
term, is the testimony of the cashier, that on the evening of
the 16th he knew that the paying teller had this check upon
his counter, and that he had received it from the plaintiff.
He did not know how he had received it or of any promise
made as to it. It would seem impossible to imagine how
knowledge of this simple fact could be construed into a
ratification by the cashier of a promise or an agreement or
understanding about which he knew nothing. Even if he
had known of Drinkard's promise to Averell, his knowledge
would simply, at the utmost, have been an acquiescence in
Drinkard's acting as the plaintiff's agent in the matter, and
not as an acceptance by him as the executive officer of the
bank of a post-dated check. It indeed is questionable
whether if the check had been left with the cashier under the
same circumstances, instead of the paying teller, and he
had failed to deliver it to the collection clerk, it could have
been held an acceptance of the check by the bank. There
can be no such thing as an acceptance of a post-dated check.
Morse on B. & B., Sec. 389c. It cannot be charged to the

drawer because it is not payable. It could not have priority to other checks payable before the day of its date. At the utmost it could only be a promise to accept and pay on the day of its date if the drawer had funds to meet it. But that is not the contract sued on. The suit is based upon an acceptance on the 16th of a check dated on the 19th, an act not within the duty or power of any officer or employee of a bank to do.

*Mr. A. A. Birney* and *Mr. E. A. Newman* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first error assigned is based upon the refusal of the court to permit the defendant to prove by its cashier, who had been examined as a witness by plaintiff, that if the plaintiff had brought the post-dated check to the bank on the 16th or 17th, and presented it during business hours, it would not have been received as a deposit from him as a depositor and an account opened. There is no doubt that a bank has the right to reject or accept a depositor at will. Morse on Banks and Banking, Sec. 178.

But this right was not in issue. The question to be determined by the jury was this: Did the defendant receive this check after business hours, for collection, out of any funds the drawer might have in his possession when it should become payable, and promise to hold the money when collected, to the plaintiff's credit and subject to his check? In other words, did the paying teller, Drinkard, receive the check from plaintiff for the purposes aforesaid; and did the cashier, with knowledge thereof, ratify or acquiesce in this action? The question was, what had been done under certain circumstances; not what might have been done under others. The evidence was not relevant, and the court was right in excluding it.

2. The doctrine is unquestioned, that where a corporation is engaged in a business requiring the services of several agents, whose powers are limited and whose duties are separate and distinct, and a party knowingly deals with one of

them in a matter beyond his authority, he cannot hold the principal bound by the agent's act unless the same shall have been ratified. Had the plaintiff met Drinkard away from the bank and entrusted the check to him, relying upon him to collect it and deposit the proceeds to his credit, clearly the bank would not have been bound by Drinkard's action, without some act of ratification. Under such circumstances Drinkard would be his own agent and not the bank's. *Manhattan Co.* v. *Lydig*, 4 Johns., 377. The facts in this case, however, show that the check was delivered to the teller at the bank where he and all the officers of the bank were engaged in attention to their duties. He was the paying teller, it is true, but he had occasionally acted as receiving teller within the knowledge of the cashier and without any objection from him. By acquiescence of the principal in the exercise of authority beyond his agency the powers of a limited agent may sometimes become greatly extended. *Merchants Bank* v. *State Bank*, 10 Wall., 604. If the facts in this record had all been before the general term on the last appeal before this, it is not probable that the court in its opinion would have gone so far as it did in the limitation given to Drinkard's agency. That opinion, too, was based almost wholly upon the case of *Thatcher* v. *Bank*, 5 Sandf., 121, a decision by the Supreme Court of New York, the authority of which has since been overturned by the Court of Appeals in the well-considered case of *East River Nat. Bank* v. *Gove*, 57 N. Y., 597.

In that case the bank sued Gove to recover $1,100 that had been paid him by mistake. By some error he had been credited with that sum in excess of his deposits and had drawn it. When the mistake was discovered he was asked to return the money. Failing to do so for some days, the paying teller wrote him a note asking him to call and pay the amount due. Gove knew that there was both a paying and a receiving teller in the bank. He came to the bank and paid the money to the paying teller, who failed to report it. It does not appear where the receiving teller was at the

time. The proof showed that the paying teller sometimes, in the absence of the receiving teller, had received money paid to or deposited in the bank. The bank was held bound by the· receipt of the money by the teller. The court said: "Banks must be held responsible for the conduct of their officers within the scope of their apparent authority. When one goes into a bank and finds behind the counter one of its officers employed in the business, and upon his demand pays a debt due the bank, in good faith, without any knowledge that the officer's authority is so limited that he has no right to receive it, he must be protected and the bank must be bound by the payment." See also *Munn* v. *Burch*, 25 Ill., 21.

The principle governing the New York case seems to us to be both reasonable and just, and the facts of this case, as we find them in the record before us, are clearly within it. Averell was not a customer of the defendant. He was slightly acquainted with Drinkard, but knew no one else connected with the bank. He called after the doors were closed for the day, as others frequently did for the transaction of business, and was admitted and shown into the anteroom. This room was next the main office where the officers and clerks were still at work, and persons therein could see through the wire partition. Drinkard went to meet the plaintiff, ascertained his business and took the two checks which he presented. He went back to the main office, procured the money and paid the check which bore date that day. He retained the post-dated check, promising to pay it when due and enter it to plaintiff's credit as a deposit. As is usual in the case of receiving a deposit, he brought out the "signature book" and had plaintiff to write his signature so that the genuineness of his checks might be established by comparison in case of need. These transactions were had, it may be said, in the very presence of the cashier, or more nearly so than similar transactions during the ordinary business opening of the bank.

Though not charged with the particular duty of receiving

such checks for collection and deposit, Drinkard had nevertheless occasionally performed the duties of the receiving teller within the knowledge of the cashier and without his objection. It is not shown as a fact that the plaintiff intended to make Drinkard his own agent; nor does it appear that he was aware of any limitation upon his authority in that regard.

The cashier testified that he saw the check on Drinkard's desk on the same afternoon and knew that he had received it from plaintiff; that he did not think it belonged to Drinkard, but inferred it was there to be paid. He made no further inquiry and said nothing with respect to Drinkard's exercise of authority beyond the scope of his employment.

The trial justice, following the decision on the last appeal, charged the jury that in the transaction Drinkard was the agent of plaintiff and not of defendant. But he further instructed them substantially to the effect that if the cashier knew of the transaction immediately after it occurred and assented thereto, the defendant would be liable for the amount of the check and protest fees if, on the 19th, the drawer had sufficient funds in the bank to meet it. We find no error in the charge with which the case was given to the jury, either in the instructions given on behalf of plaintiff or in the qualification attached to defendant's special instruction. Had the court instructed the jury to find as a fact from all the evidence, whether or not in the transaction itself, Drinkard was acting as the agent of the defendant, we would not hold it to be error. The effect of the charge as given was substantially the same as that, but the form in which it was put made it more favorable to the defendant.

3. When the bank opened on the 19th the drawer had funds therein more than enough to discharge the check. This was sufficient to make the bank liable, and it made no difference that at the closing hour the account of the drawer had been overdrawn. The money must be considered as if in fact collected and placed to the credit of plaintiff, and the failure to recognize his right to it gave him his right of ac-

tion as for money had and received. *Kilsby* v. *Williams*, 5 Barn. &. Ald., 815; S. C. 7 Eng. Com. Law Rep., 443; *Oddie* v. *The Bank*, 45 N. Y., 735 ; *Bank* v. *Burns*, 68 Ala., 275 ; *Tinkham* v. *Heyworth*, 31 Ill., 519.   It was well said in *Kilsby* v. *Williams*, that: "When they received the check from him they became his agents to receive the money upon it as soon as possible, and if they could be allowed to appropriate the money received by them to the payment of subsequent checks, it would be doing great injustice and injury to their own customers." In *National Bank* v. *Burkhardt*, 100 U. S., 686, it was held, that if at the time a check is handed into the bank, the holder demands to have it placed to his credit, the bank may refuse to do so.   But if it retains the check it is bound to the depositor; and no usage or custom that checks shall be held and only credited at the close of the day's business, provided there are then funds on hand to meet it, will be suffered to prevail against it.   It was also said that in such a case the ordinary rule that a day is an indivisible unit will be disregarded, and the actual priority of the transaction permitted to be shown.

No error having been found in the proceedings below, *the judgment must be affirmed, with costs to the appellee ; and it is so ordered.*