CAMILLE L'HERBETTE *vs.* PITTSFIELD NATIONAL BANK.

Berkshire.    September 11, 12, 1894. — October 17, 1894.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*National Bank — Principal and Agent — Evidence.*

If the cashier of a national bank, assuming to act in its behalf, receives at the bank money left with him as and for a deposit in the bank, the fact that, at the time of receiving it, he agrees that the bank shall at some time in the future invest the money in stocks and bonds for the depositor, and meanwhile shall allow him interest upon it, does not have the effect to exonerate the bank from its liability to refund the money without interest to the depositor on demand, no investment thereof having been made, even if such agreement by the cashier was invalid, and the money did not actually come to the use of the bank, but was misappropriated by the cashier.

At the trial of an action against a national bank for money deposited at the bank with its cashier, upon the agreement that the money should be invested by the bank in stocks and bonds, no exception lies to an instruction to the jury that, "if the directors " of the bank, "through inattention or otherwise, suffered the cashier to pursue and practise a certain line of conduct for a considerable period of time without objection, the bank will be bound by his acts within that line of conduct."

In an action against a national bank for money deposited at the bank with its cashier, it appeared that the money was sent by the plaintiff to the bank at different times, with slips or tickets in substance like ordinary slips or tickets accompanying deposits; that the money was withdrawn on orders addressed to the bank, resembling ordinary checks; and that the sums so paid in and so withdrawn were entered by the cashier on an envelope, and the entry in one instance was verified by his initials, thus: "E. S. F., Cas." *Held,* that the envelope was admissible in evidence.

In an action against a national bank for money deposited at the bank with its cashier, upon the agreement that the money should be invested by the bank in stocks and bonds, if the issue is whether the plaintiff dealt with the cashier as an individual or as the representative of the bank, evidence of former transactions similar in kind are competent.

Although a witness, whose deposition is taken out of the Commonwealth, annexes copies instead of the originals of papers to the deposition, the court in its discretion may allow them to be read.

In an action against a national bank for money deposited at the bank with its cashier, upon the agreement that the money should be invested by the bank in stocks and bonds, the issue being whether the plaintiff dealt with the cashier as an individual or as the representative of the bank, a broker testified that his firm bought certain shares of stock for the defendant bank, taking the certificate in the plaintiff's name, and that his firm had had another account with the bank for several years. *Held,* that a receipt for shares of said stock in the plaintiff's name from the witness's firm signed by the defendant's cashier as such, previously to the transaction in suit, was admissible in evidence.

In an action against a national bank for money deposited at the bank with its cashier, upon the agreement that the money should be invested by the bank in stocks and bonds, the issue being whether the plaintiff dealt with the cashier as an individual or as the representative of the bank, a witness, who was the book-keeper of the bank, testified that the bank had accounts with brokers in two cities named who bought and sold stocks for its customers if ordered ,through the bank; and that these brokers, on occasions prior to the transaction in suit, had bought for the bank certain shares of stock for which certificates were by its direction, as shown by other evidence, taken in the plaintiff's name. *Held,* that the testimony was competent.

Evidence to show that a bank did not enter on its books a person's name as a depositor is incompetent, in an action by such person against the bank for money deposited at the bank with its cashier, upon the issue whether the plaintiff dealt with the cashier as an individual or as the representative of the bank, the cashier agreeing that the money should be invested by the bank in stocks and bonds.

An exception cannot be sustained to the exclusion of evidence which is contended to have been competent as tending to show a fact which has been found by the jury in favor of the excepting party.

In an action against a national bank for money deposited at the bank with its cashier, upon the agreement that the money should be invested by the bank in stocks and bonds, the issue being whether the plaintiff dealt with the cashier as an individual or as the representative of the bank, the question to a witness who had been a bookkeeper for the bank, "whether or not to his knowledge the plaintiff had any account with the bank " in certain years named, is rightly excluded, there being no suggestion that the witness knew anything about the transactions with the cashier.

CONTRACT, upon an account annexed, for money deposited by the plaintiff with the defendant. At the trial in the Superior Court, before *Maynard,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*J. C. Crosby,* (*J. F. Noxon* with him,) for the defendant.

*T. P. Pingree & C. E. Burke,* for the plaintiff.

ALLEN, J. At the trial, the issue was clearly defined whether the money was paid to Francis, the defendant's cashier, in his individual capacity, to be used by him individually for the plaintiff, or whether it was paid to him as cashier of the bank, and as and for a deposit in the bank. According to the findings of the jury, the plaintiff deposited his money with Francis, acting as cashier of the defendant bank, and Francis received the same acting in that capacity, and not in his individual capacity. An agreement was made that the money should draw interest, but there was no usage of the bank authorizing the cashier to allow interest on deposits, and the jury allowed none in their verdict. The defendant bank did not actually receive

the money from the cashier.   The deposits were upon the distinct understanding and agreement with Francis as cashier that the same should · be invested by the bank in stocks and bonds for the plaintiff.

The scope of the last finding is not clearly defined, but it has not been assumed by counsel on either side that the money was to be invested by the bank at its mere discretion, and without previous directions from or the assent of the plaintiff.   The argument for the defendant is that national banks have no authority to deal in stocks or bonds, or to act as brokers or agents for others in the purchase of them; and also that an agreement by the cashier that deposits should draw interest was beyond his authority, and not binding upon the defendant.

Let these positions of the defendant be assumed without discussion to be correct.   Assume also that the plaintiff was bound to take notice of the limitation of the power of the bank, and of the authority of the cashier in these respects.   It follows certainly that he could not enforce these agreements, but it does not follow that he could not recover back his money without interest, no investment of it having been made for him by the bank or by the cashier.

There is no doubt that the cashier was a proper officer of the bank to receive deposits of money at the bank in its behalf, (Morse on Banking, § 161,) and there was nothing criminal or immoral in either of the agreements made by him.   If those agreements were invalid because *ultra vires* or unauthorized, there certainly would be no reason why the bank should not be held to refund to the plaintiff his money on demand, provided the bank had actually received it.   The fact of the cashier's making the invalid agreements at the time of receiving the deposits would not entitle the bank to retain the money for its own use, or debar the plaintiff from recovering it back.

Nor does the fact that the money, by reason of the cashier's misappropriation of it, did not actually come to the use of the bank, make any difference.   The dealing between the plaintiff and the cashier was at the bank, and it was on the footing that in receiving the money the cashier represented the bank.   The money was paid and received as and for money deposited in the bank.   Suppose that no agreement as to the future invest-

ment of the money had been made, it could hardly be doubted that the money paid at the bank to the cashier, as and for a deposit in the bank, and accepted by him as such, would be treated as having been received by the bank, even though the cashier should embezzle it. The agreement was that the money should be invested by the bank; not that it should be invested by Francis. The making of this agreement does not impair the obligation which rests upon the bank by reason of the deposit of the money with its cashier. The bank is bound because its cashier, assuming to act in its behalf, received the plaintiff's money as money deposited in the bank; and the fact of his making invalid agreements, if his agreements were invalid, that the bank should at some time in the future invest the money for the plaintiff, and meanwhile should allow him interest upon it, does not have the effect to exonerate the bank from its liability to refund the money without interest to the plaintiff on demand, no investment thereof having been made by it. *White* v. *Franklin Bank,* 22 Pick. 181. *Atlas Bank* v. *Nahant Bank,* 3 Met. 581, 585–588. *Dill* v. *Wareham,* 7 Met. 438. *Morville* v. *American Tract Society,* 123 Mass. 129, 137, 138. *Davis* v. *Old Colony Railroad,* 131 Mass. 258, 275. *Logan County National Bank* v. *Townsend,* 139 U. S. 67, 74. *Spring Co.* v. *Knowlton,* 103 U. S. 49. *Hitchcock* v. *Galveston,* 96 U. S. 341, 350. *East River National Bank* v. *Gove,* 57 N. Y. 597, 601. *Ziegler* v. *First National Bank of Allentown,* 93 Penn. St. 393. *First National Bank of Monmouth* v. *Brooks,* 3 Nat. Bank Cas. 387. *Thompson* v. *Bell,* 10 Exch. 10.

The defendant excepted to the statement by the court that, " If the directors, through inattention or otherwise, suffered the cashier to pursue and practise a certain line of conduct for a considerable period of time without objection, the bank will be bound by his acts within that line of conduct." It is not necessary for us to hold that this would be correct as a universal proposition. The defendant's argument upon it is that the bank would not be bound because of the cashier's agreement as to investing the money; and the only significance of the instruction was that the bank would be bound, if the directors suffered the cashier to receive money from depositors with an agreement that the same should be invested by the bank in stocks and

bonds.   The instruction must be considered with reference to the aspect of the case to which it was applicable.   So considered, it was right.   Beyond this we need not go till the question actually arises.

The defendant also relies on certain exceptions in matters of evidence.

1. As to the envelope.   According to the testimony of the plaintiff and his daughter, this was used and delivered to the plaintiff by the cashier as a statement of the plaintiff's account in the bank, in like manner as an ordinary bank-book is generally used and delivered.   Money was sent by the plaintiff at different times, with slips or tickets addressed to the defendant bank, in substance like ordinary slips or tickets accompanying deposits ; and the money was withdrawn on orders addressed to the defendant bank, resembling ordinary checks.   The sums so paid in and so withdrawn were entered by the cashier on this envelope, and the entry in one instance was verified by his initials, thus : " E. S. F., Cas."   There was a statement that interest was to be paid at the rate of four per cent, but no minute of the agreement to invest the money in the future. This envelope was competent as the statement by the proper officer of the bank, made at the time of actual transactions, of the sums received and paid out.   There can be no doubt that an ordinary bank-book is competent against a bank for the purpose of showing the state of a depositor's account.   This envelope was admissible in like manner.   Morse on Banking, § 103.

2. On the question whether the plaintiff was dealing with Francis as an individual or with him as an officer of the defendant bank, the former transactions were competent, being similar in kind.

3. Although the deponent Parmly, who was out of the State, annexed copies instead of the originals of papers to his deposition, the court in its discretion might allow them to be read. *Binney* v. *Russell*, 109 Mass. 55.   *Williamson* v. *Cambridge Railroad*, 144 Mass. 148.

4. Exhibit 19 * was competent as tending to show that the plaintiff's former dealings were with the defendant bank.   Ac-

---

* Exhibit 19 was as follows : " Pittsf'd, Mass., Aug. 26, 1891.   Received of Lee, Higginson, & Co., Certificate No. 25925 for Three ——3—— Shares

cording to Jackson's testimony, his firm (Lee, Higginson, and Company) bought the shares in question for the defendant bank, taking the certificate in the plaintiff's name; and his firm had had an open account with the defendant bank for several years.

5. The testimony of Willis D. Smith was competent, as tending to show not only that the defendant was in the habit of acting for its customers in the purchase of stocks through brokers in Boston and New York, but also that the former dealings of the plaintiff were with the bank, and that the bank kept on its books accounts with the two firms of brokers who on former occasions had bought for the bank the shares for which certificates were by its direction taken in the plaintiff's name.

6. Testimony to show that the defendant did not enter on its books the plaintiff's name as a depositor had no legitimate tendency to show that the plaintiff's transactions were not with the bank. This would at most be an implied denial by the defendant of its liability, in the absence of the plaintiff, who cannot be affected by its omission to make entries on its books. *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448, 455. *Morse* v. *Potter,* 4 Gray, 292, 293.

It is now contended that this evidence was competent, as tending to show that the bank never received the benefit of the plaintiff's money. Whether this was so or not, the jury found this fact in favor of the defendant, and no exception can now be sustained on this ground to the exclusion of the evidence.

7. The question to the witness Charles C. Francis, who had been a bookkeeper for the defendant, "whether or not to his

Boston & Albany R. R. Co., In the name of Camille L'Herbette. E. S. Francis, Cas."

Willis D. Smith testified that he was the bookkeeper of the defendant bank in the years 1892 and 1893; that the bank had accounts with brokers in New York and Boston, who bought and sold stocks for its customers if ordered through the bank; that these brokers were Marquand and Parmly in New York, and Lee, Higginson, and Company in Boston; and that the books of account with the brokers showed that, on February 24, 1891, the bank bought five shares, and on August 26, 1891, three shares, of Boston and Albany Railroad stock, through Lee, Higginson, and Company, and on December 24, 1891, bought thirteen shares of " C., B. & Q." stock through Marquand and Parmly. It appeared by the evidence of these brokers that the certificates for these shares of stock were taken, by the bank's directions, in the plaintiff's name.

knowledge the plaintiff had any account with the bank in 1892 or 1893," was rightly excluded. His knowledge was only that which was shown by the books. There was no suggestion that he knew anything about the transactions with the cashier. He was merely a bookkeeper, so far as appears.

The defendant made a general request for a ruling that, on the whole evidence, the plaintiff could not recover. This ruling was rightly refused. The evidence was sufficient to warrant the verdict for the plaintiff.

On an examination of the whole case, the trial appears to have been well conducted, and we find no error in any of the rulings which were excepted to.                *Exceptions overruled.*