## Louisa Nat. Bank v. Sparks.

(Decided March 23, 1937.)

W. D. O'NEAL and A. O. CARTER for appellant.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Mrs. M. B. Sparks brought this suit against the Louisa National Bank to recover on a contract by which the bank agreed to make loans out of her checking account and be responsible for them. The bank defended on the ground that the cashier who made the contract was without authority to make it, and that the transaction was ultra vires. To this defense Mrs. Sparks interposed a plea of estoppel, based on the ground that the bank received and retained the entire benefit of the transaction. By agreement the cause was submitted to the court and judgment was rendered in favor of Mrs. Sparks for $4,000 with 4 per cent. interest thereon from March 21, 1933, subject to a credit of $40 as of June 30, 1934. The bank appeals.

The facts are: In the year 1924 Mrs. Sparks had in the bank a balance of approximately $10,000, and was receiving 3 per cent. interest. With the view of getting more interest, her son, Dr. Proctor Sparks, acting as her agent, approached M. F. Conley, cashier of the bank, and Conley agreed on behalf of the bank to reloan Mrs. Sparks' money and pay her 4 per cent.

Thereafter Conley drew $4,000 out of Mrs. Sparks' account by the following check:

"Louisa, Ky., Nov. 29, 1924.

"The Louisa National Bank,

"Pay to the order of Louisa National Bank $4,000.00 for two notes purchased for Mrs. Sparks to be collected for her. Charge to Mrs. Alice Sparks."

The amount of the check was charged to Mrs. Sparks and was received by the bank. On the same day Conley took out of the assets of the bank two notes for $2,000 each, which the bank had previously discounted. Mrs. Sparks was never advised of the transaction and never heard of the notes until the trial began. On October 10, 1925, the cashier sent to Mrs. Sparks a letter evidencing her contract with the bank. Omitting the head, giving the name of the bank, the amount of its capital stock, surplus, and undivided profits, and also the names of its officers, including that of M. F. Conley, cashier, the letter reads as follows:

"Mrs. M. B. Sparks, Louisa, Kentucky.

"Dear Madam: This letter is to confirm the arrangement made with you about the 1st of December, 1924, for this bank to make loans and be responsible for them out of your checking account at this bank to the amount of about $4,000.00. Interest from these notes is to be credited to your account from time to time and we agree to collect the notes and turn the amount of principal back into your account when you request.

"In regard to the amount of interest earned on your checking account, it is agreed that it shall amount to not less than four (4) per cent on the average taking into consideration interest credited to your account from notes loaned as above stated.

"Very truly yours,

"Louisa National Bank

"By M. F. Conley, Cashier."

The 4 per cent. interest was paid regularly until March 1, 1933. Thereafter there was only one credit of $40 paid on June 30, 1934. Suit was brought after Mrs. Sparks demanded her money and the bank refused to pay her check.

In support of the ruling below, it is argued that, in its final analysis the case is simply one where the bank borowed the money of a depositor, and this it had the power to do. Planter's Bank v. Sharp, 6 How. 301, 12 L.Ed. 447; Farmers' & Merchants' Bank v. Wisdom, 226 Ky. 179, 10 S. W.(2d) 846. In view of the fact that the money of the depositor was paid to the bank, and the two notes claimed to have been purchased were never delivered to the depositor, and she was never informed of the transaction, there is much to be said in favor of the position. In view of our conclusion, however, that question need not be considered. If this were a case where the bank had agreed to loan the money of a depositor and to be responsible for the loan, and the money had been loaned to a third party, it is clear that the transaction would have been beyond the power of the bank and the bank would not have been liable on its contract. First National Bank v. Stringfield, 40 Idaho, 587, 235 P. 897; Farmers' & Miners' Bank v. Bluefield Nat. Bank (C.C.A.) 11 F. (2d) 83, certiorari denied 271 U.S. 669, 46 S.Ct. 483, 70 L.Ed. 1142. That, however, is not the case. Other elements are present calling for the application of different principles. A national bank is liable to the extent that it has received funds or benefits from its ultra vires contracts, Michie on Banks and Banking, c. 15, sec. 169, and where the transaction is not absolutely void a national bank may be estopped to assert the defense of ultra vires. Logan County National Bank v. Townsend, 139 U.S. 67, 11 S.Ct. 496, 35 L. Ed. 107; California National Bank v. Kennedy, 167 U.S. 362, 17 S.Ct. 831, 42 L.Ed. 198; Shaw v. National German-American Bank, 199 U.S. 603, 26 S.Ct. 750, 50 L.Ed. 328. Thus it was held that a bank rediscounting notes in reliance on a national bank's oral guaranty may recover benefits received from the national bank, irrespective of the validity of the guaranty. Farmers' & Miners' Bank v. Bluefield Nat. Bank, supra. And where a national bank to which a contractor had assigned the amounts to become due under the contract as security for advances made by the bank guaranteed payment by the contractor for supplies furnished to enable him to complete the contract, and became entitled under its assignment to an amount exceeding the guaranteed purchase price, it is liable to pay the guaranteed price of the goods from which it has received a benefit in excess of its guaranty,

even though its guaranty was invalid. First Nat. Bank v. J. L. Mott Iron Works, 258 U.S. 240, 42 S.Ct. 286, 66 L.Ed. 593. So, too, a national bank which, in pursuance of a previous agreement with its debtor that he would devote to the discharge of his indebtedness a part of the proceeds of a loan to be obtained by him from anther bank, requests the making of such loan, and guarantees its payment at maturity, must account to the lending bank for the sum which it receives for its own use in the execution of the agreement, even though such guaranty is beyond its powers under the national banking statutes. Appelton v. Citizens' Cent. Nat. Bank, 190 N.Y. 417, 83 N.E. 470, 32 L.R.A.(N.S.) 543. In the case of L'Herbette v. Pittsfield Nat. Bank, 162 Mass. 137, 38 N.E. 368, 44 Am. St.Rep. 354, the cashier of a national bank, on behalf of the bank, received a deposit under the agreement that it was to be invested by the bank in stocks and bonds for the benefit of the depositor, and it was held that the bank was liable for the return of the money, notwithstanding the agreement on which it was received may have been ultra vires. In the case under consideration, the two notes claimed to have been purchased by the bank for the depositor had been discounted by, and were the property of, the bank itself.

It was within the authority of the cashier, who is shown to have been the executive officer of the bank, to rediscount the two notes. Auten v. U. S. National Bank of New York, 174 U.S. 125, 19 S.Ct. 628, 43 L.Ed. 920. Had the bank indorsed the notes, it would have been liable on its indorsement, and it is not perceived why it, as the owner of the two notes, and as incidental to the exercise of its power to buy and sell commercial paper, could not have rediscounted them and have guaranteed their payment. Thomas v. City Nat. Bank, 40 Neb. 501, 58 N.W. 943, 24 L.R.A. 263; People's Bank of Belleville v. Manufacturers' National Bank of Chicago, 101 U.S. 181, 25 L.Ed. 907; Farmers' & Miners' Bank v. Bluefield Nat. Bank, supra. Not only so, but even if the bank is not liable on the contract, it received and retained the depositor's money, and, the contract not being malum in se, it is liable to the extent it was actually benefited by the transaction. Gilbert v. Citizens' Nat. Bank, 61 Okl. 112, 160 P. 635, L.R.A. 1917A, 740. It follows that the decision of the circuit court was proper.

Judgment affirmed.