EASTERN EXPANDED METAL COMPANY *vs.* WEBB GRANITE
AND CONSTRUCTION COMPANY.

WEBB GRANITE AND CONSTRUCTION COMPANY *vs.* EASTERN
EXPANDED METAL COMPANY.

Suffolk.    March 26, 1907. — May 14, 1907.

Present: KNOWLTON, C. J., MORTON, SHELDON, & RUGG, JJ.

*Statute. Building Laws. Contract,* Validity, Performance and breach, Implied: common counts. *Practice, Civil,* Exceptions.

St. 1892, c. 419, relating to the construction, maintenance and inspection of buildings in the city of Boston, forbidding the erection of buildings contrary to, and prescribing a penalty for the violation of its provisions and giving jurisdiction in equity for its enforcement, does not prescribe regulations that are merely directory, but forbids and renders illegal the acts which it purports to prohibit, and a contract undertaking to provide for such acts is illegal.

A contract in writing between a contractor and a subcontractor provided for the construction of the steel frame, the floors, the roof and some other parts of a building in Boston in conformity with the requirements of the statute regulating such construction, to the satisfaction of the building commissioner of Boston and as shown on certain plans and drawings. The drawings made the roof have a pitch of thirty degrees. St. 1892, c. 419, § 64, forbade under a penalty the erection of a building of the class contracted for with a roof having a pitch of more than twenty degrees. At the trial of an action against the subcontractor for a breach of the contract the presiding justice directed a verdict for the defendant. *Held,* that the contract was illegal, and the action could not be maintained.

A contract in writing between a contractor and a subcontractor provided for the construction of the steel frame, the floors, the roof and some other parts of a building in Boston in conformity with the requirements of the statute regulating such construction, to the satisfaction of the building commissioner of Boston and as shown on certain plans and drawings. The drawings made the roof have a pitch of thirty degrees. St. 1892, c. 419, § 64, forbade under a penalty the erection of a building of the class contracted for with a roof having a pitch of more than twenty degrees. The subcontractor did not know when the contract was executed that it called for work contrary to the statute, but, upon learning such to be the fact, discontinued work and brought an action on a *quantum meruit* for labor and materials furnished. The defendant set up in defence the plaintiff's non-performance and breach of the contract. *Held*, that the justice presiding at the trial rightly ruled that the contract was illegal and that non-performance or breach of it was no defence.

A contract in writing between a contractor and a subcontractor, providing for the constructing of certain portions of a building in Boston, was illegal because it stipulated for a roof contrary to St. 1892, c. 419, § 64, but this illegality was not known to the subcontractor when he executed the contract nor until he had performed a large part of it. He discovered such illegality before he had performed any of the portion of the contract which was in contravention of the statute, and thereupon disaffirmed the contract and brought an action on a *quantum meruit* for labor and materials furnished. *Held*, that, the acts forbidden by the statute not involving moral turpitude but being merely *mala prohibita*, and the contract being executory as to them, the action might be maintained.

A subcontractor brought an action on a *quantum meruit* against a contractor for labor and materials furnished in the construction of a building in Boston. The labor and materials were furnished under an entire and indivisible contract in writing which was held to be illegal because it stipulated for the construction of a roof contrary to the provisions of St. 1892, c. 419, § 64. The plaintiff had disaffirmed the contract when he first knew of its illegality which was not until he had furnished the labor and materials sued for. The defendant contended that the plaintiff could not recover because, after discovery by him of the illegality of the contract, he employed an engineer to make plans for the roof. It appeared that the plans were made pending negotiations as to a new arrangement between the parties, that they were never delivered to the defendant, and that the plaintiff was not seeking compensation for them. *Held*, that the justice presiding at the trial rightly refused to direct a verdict for the defendant.

In an action on a *quantum meruit* for labor and materials furnished by a subcontractor to a contractor in the construction of a building in Boston, it appeared that the labor and materials were furnished under an entire and indivisible contract which was held to be illegal because it stipulated for the construction of a roof contrary to the provisions of St. 1892, c. 419, § 64. The plaintiff, when he first learned of the illegality of the contract, which was after he had furnished the labor and materials sued for, disaffirmed the contract. Some steel girders furnished by the plaintiff did not comply with the provisions of St. 1892, c. 419, and the defendant reinforced them and, in trials of the case before an auditor and before a jury, claimed and was allowed a reduction in damages for his expense in so doing. At the argument of his exceptions, for the first time, he contended that the plaintiff should be barred from recovery entirely because he had acted contrary to the statute. The court, without deciding whether the contention was open to the defendant on the record, *held*, that it was not well founded.

Two ACTIONS OF CONTRACT. Writs in the Supreme Judicial Court for the county of Suffolk dated respectively May 3, 1898, and July 18, 1898. The Eastern Expanded Metal Company will hereinafter be called the plaintiff, and the Webb Granite and Construction Company the defendant.

The first action is on a *quantum meruit* for labor and materials furnished in the erection of the Hotel Somerset in Boston, and the answer alleged that the labor and materials were furnished under an entire and indivisible contract in writing which the plaintiff had refused to perform completely and had broken in other respects specifically set out, among them in that the plaintiff, while contracting to conform with the building laws of the city of Boston, had failed to furnish in the work steel and other materials in conformity with such laws.

In the second action the defendant sought recovery from the plaintiff for breach of the contract in writing which he had set up in defence to the first action, and the defence of the plaintiff was that such contract was illegal.

The main facts upon which the controversy between the parties is based are stated in the opinion.

The cases were referred to an auditor who made a report. There was a trial before Sheldon, J. The question submitted to the jury and referred to at the beginning of the second paragraph of the opinion was as follows:

"Did the plaintiff, when it executed either of the agreements with the defendant, have actual knowledge that the agreement called for a roof with a pitch of more than 20 degrees?"

The jury answered in the negative.

On facts admitted by the parties the presiding justice ruled that the contract in writing set up in defence of the first action and as the basis of the second action was illegal and could not be relied on for either purpose, and the defendant excepted.

It appeared that, after discovery by the plaintiff of the illegality of the contract, there were negotiations between the parties looking toward a new arrangement either for the construction of the roof as planned or of a roof which would conform with St. 1892, c. 419, § 64. During such negotiations the plaintiff employed one Mace Moulton to make some plans as to the roof. These plans were never delivered to the defendant, and no re-

covery for them was sought by the plaintiff. The defendant contended that the making of such plans was the performing of illegal work under the contract and barred recovery on a *quantum meruit* for lawful work already performed. It was admitted by the defendant that no work on the roof other than the making of the plans was done by the plaintiff. The presiding justice ruled that the making of the plans was not work on the roof and charged the jury on the subject as follows:

" Nor is the plaintiff precluded from recovering in this case by the fact, which I understand both parties agree to be the fact, that Mace Moulton worked upon plans for the roof in question either before or after the plaintiff knew of the illegal pitch of the roof. As long as they did the work either for their own convenience or otherwise in having the plans drawn, but did not turn those plans over to the defendant and did not themselves perform any work either upon the roof or on the trusses or structural steel for the roof to be made with this illegal pitch, the mere fact that they told Moulton to prepare plans for the roof, whether he was to prepare them for a legal or an illegal roof, being something which they did, so far as they did it, in looking forward to possible future agreements that were not afterwards made, would not prevent them from recovering."

At the trial before the auditor and at the trial before the jury, it appeared that some of the structural steel furnished by the plaintiff was not of sufficient strength to comply with the requirements of St. 1892, c. 419, and that the defendant was obliged to re-enforce certain members and was put to an expense of $3,418. The auditor in his finding deducted this expense from the claim of the plaintiff as being a legitimate lessening of the benefit to the defendant of the labor and materials furnished by the plaintiff. At the trial before the jury, the parties agreed that, if there was any finding in favor of the plaintiff, it should be in the amount found by the auditor. The jury found for the plaintiff.

The defendant did not contend either at the trial before the auditor or at the trial before the jury that the furnishing of steel not in accordance with St. 1892, c. 419, precluded recovery by the plaintiff on a *quantum meruit*. It did so contend on the argument of its exceptions.

The defendant filed numerous requests for rulings which were refused by the presiding justice, to which refusal it excepted. What such requests were sufficiently appears in the opinion. Among them was the following:

"If the court should rule and instruct the jury that the contract of November 8, 1897, as modified by the contract of December 17, 1897, was an illegal contract and void, and that it was no defence to this action under the *quantum meruit* on that ground, then upon all the evidence in this case the plaintiff in this case cannot recover."

*E. R. Anderson*, (*I. F. Paul & A. T. Smith* with him,) for the Webb Granite and Construction Company.

*C. R. Clapp*, (*W. H. Best* with him,) for the Eastern Expanded Metal Company.

KNOWLTON, C. J.   These are cross actions growing out of the furnishing of labor and materials by the plaintiff in the first action, hereinafter called the plaintiff, for the defendant in that action, which is hereinafter called the defendant, in the erection of the Hotel Somerset on Commonwealth Avenue in Boston. The first suit was brought upon an account annexed, and the second is for a breach of a contract in writing under which the work was done.   This contract called for the construction by the plaintiff of the steel frame, the floors, the roof and some other parts of the building, "in conformity with the requirements of the statute regulating the construction, maintenance and inspection of buildings in the city of Boston, and to the satisfaction of the building commissioner of said city," all as shown in the drawings prepared by the architect, etc.   Section 64 of the St. 1892, c. 419, regulating the construction of buildings in the city of Boston, forbids under a penalty the erection of a building, of the class to which the Hotel Somerset belongs, with a roof having a pitch of more than twenty degrees.   The drawings of the architect made the roof of this building have a pitch of thirty degrees.   The contract, by a general provision, required that the building should be erected in conformity with this statute, but in the particular provisions as to the roof it called for a building whose erection was forbidden by the statute.   Out of this part of the contract relative to the roof the controversy between the parties has arisen.

The jury, in answer to a question, have found by their verdict that the plaintiff, when the contract was executed, did not know that the agreement called for a roof with a pitch of more than twenty degrees. The contract was executed on November 8, 1897, and on December 17, 1897, it was modified by a supplemental contract which does not affect the questions before us. On March 25, 1898, the plaintiff's attention having been called to the pitch of the roof, it wrote to the defendant in regard to it, and from that date until May 22, 1898, there were negotiations by letters and interviews between the parties in reference to this matter, to see if some arrangement could be made that would be satisfactory to both. On this last date, the defendant having finally insisted that the room should be constructed with a pitch of thirty degrees according to the contract, and the plaintiff having declined to violate the law in this particular, the plaintiff discontinued work, and the defendant caused the construction to be completed by another party.

The presiding justice ruled that the contract was illegal, and that the defendant could not recover damages in the cross action for the breach of it, nor avail itself of this breach as a defence to the plaintiff's claim in the original action. The exception of the defendant to this ruling presents the first question for our consideration.

While this statute was enacted in the interest of the public, with a prescribed penalty for the violation of its provisions, and while it gives jurisdiction in equity for its enforcement, we think that it plainly renders illegal the acts which it purports to prohibit, and that it forbids these acts, instead of prescribing regulations that are merely directory. In this respect the case is unlike *Larned* v. *Andrews*, 106 Mass. 435, *Learned* v. *Geer*, 139 Mass. 36, and *Bowditch* v. *New England Ins. Co.* 141 Mass. 292; and is like *William Wilcox Manuf. Co.* v. *Brazos*, 74 Conn. 208, *Spurgeon* v. *McElwain*, 6 Ohio, 442, *Shortall* v. *Fitzsimmons & Connell Co.* 93 Ill. App. 231, *Stevens* v. *Gourley*, 7 C. B. (N. S.) 99, and *Stewart* v. *Thayer*, 168 Mass. 519. We are of opinion that the judge was right in ruling that the contract was not enforceable in favor of the defendant, either as a foundation for a cross action or as a defence to the original action.

The next question is whether the jury could be permitted to

find for the plaintiff on the account annexed, upon its disaffirmance of the contract under which the labor and materials were furnished.

It has been held in many cases that, where the matters called for in the contract that render it illegal do not involve moral turpitude, but are merely *mala prohibita*, either party, while it remains executory, may disaffirm it on account of its illegality and recover back money or property that he has advanced under it. If the contract has been executed the court will not relieve either party from the consequences of his own violation of law. But so long as it is entirely unexecuted in that part which the law forbids, there is a *locus penitentiae*. The doctrine is stated very fully in *White* v. *Franklin Bank*, 22 Pick. 181. This rule is followed in *Love* v. *Harvey*, 114 Mass. 80, *Atlas Bank* v. *Nahant Bank*, 3 Met. 581, and *Morgan* v. *Beaumont*, 121 Mass. 7. It is established in a long line of English cases. *Hastelow* v. *Jackson*, 8 B. & C. 221. *Bone* v. *Ekless*, 5 H. & N. 925. *Taylor* v. *Bowers*, 1 Q. B. D. 291. *Hampden* v. *Walsh*, 1 Q. B. D. 189. *Strachan* v. *Universal Stock Exchange Co.* [1895] 2 Q. B. 329. *Hermann* v. *Charlesworth*, [1905] 2 K. B. 123, 135. It is also adopted generally in America. *Spring Co.* v. *Knowlton*, 103 U. S. 49. *Block* v. *Darling*, 140 U. S. 234, 239. *Pullman Car Co.* v. *Central Transportation Co.* 171 U. S. 138. *Kiewert* v. *Rindskopf*, 46 Wis. 481. *Urwan* v. *Northwestern Ins. Co.* 125 Wis. 349. *Skinner* v. *Henderson*, 10 Mo. 205. Most of these cases relate to the recovery of money or property that has been advanced under the illegal contract which is subsequently repudiated. In the present case labor and materials for the improvement of real estate were furnished by the plaintiff. In this Commonwealth, when labor and materials are furnished and used upon real estate under a special contract, and for reasons which are not prejudicial to the plaintiff the contract becomes of no effect, it is held that the party furnishing them may recover upon a *quantum meruit* for their value as a benefit to the real estate. A familiar illustration of this rule is found in the cases where a contractor, acting in good faith in an effort to perform his contract, fails to complete it entirely, as in *Hayward* v. *Leonard*, 7 Pick. 181, and *Blood* v. *Wilson*, 141 Mass. 25. Another illustration is when it becomes impossible to perform

the contract because the subject to which it relates is destroyed, by fire or otherwise, without the fault of either party. *Butterfield* v. *Byron*, 153 Mass. 517. *Angus* v. *Scully*, 176 Mass. 357. *Young* v. *Chicopee*, 186 Mass. 518. We are of opinion that, when labor and materials have been furnished upon real estate under a contract which contains an illegal element under a prohibitory statute, and when the contract remains entirely executory in that part which is illegal, and is disaffirmed because of its illegality, the disaffirming party has the same right to have compensation for the benefit conferred upon the real estate that he would have to recover for money or property received by the other party before the disaffirmance of such a contract. This is an application of the principle which governs the decisions in the cases cited above.

In the present case, under the instructions of the court, the jury must have found that the contract was disaffirmed by the plaintiff because of its illegality, and that, in reference to the objectionable part, it remained wholly executory. We are of opinion that the construction of the lower portions of the building, which were entirely in conformity with the statute, did not deprive the plaintiff of its right to repudiate the contract before doing anything which was illegal, especially as it has been found that the plaintiff was ignorant of the illegality when it executed the contract, and as it was easy to change the plan for the roof and make it conform to the statute when the plaintiff left the work. In many of the cases cited above some action had been taken by the plaintiff under the contract before the disaffirmance of it, as in the cases of recovery of money wagered and put in the hands of a stakeholder. The important point in most of the decisions is that the part of the contract directly in violation of law had not been executed. The bringing of suit for the recovery of money or property advanced necessarily implies that something has been done under the contract.

The fact that some work was done by an engineer of the plaintiff on the plans for the roof, which did not form a part of the construction of the building, and for which no claim was made in this suit, is immaterial. This was done in connection with negotiations for a new arrangement between the parties,

which occupied a considerable time. These plans were not turned over to the defendant.

The defendant's contention that the plaintiff cannot recover because of evidence that, under the arrangement of the supporting portions of the frame, a part needed reinforcement to sustain the weight of the building, is not well founded. This contention was not made at the trial, and if it is open to the defendant on the record, it does not call for extended discussion. In working under the plans both parties must have intended that, if reinforcement was anywhere needed to conform to the requirements of the law as to the strength of the building, it would be furnished. This evidence only affects the amount to be recovered, and due allowance has been made for the deficiency, both in the auditor's report and in the verdict of the jury.

In each case the entry is

*Exceptions overruled.*