THE NATIONAL SHAWMUT BANK OF BOSTON *vs.* THE CITIZENS NATIONAL BANK OF BOSTON.

Suffolk. October 2, 1933. — June 30, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Contract*, Construction, Validity, Implied. *Bank and Banking. National Bank. Corporation*, Ultra vires, Corporate entity. *Evidence*, Extrinsic affecting writings.

A contract between a national bank in voluntary liquidation and another national bank provided, in part, that the second bank should purchase the business and good will of the first bank and should pay therefor a sum equivalent to $30 per share on the outstanding shares of the first bank; that "also, in order that" the first bank "may make an immediate distribution in liquidation of" $75 per share, the second bank "will at the same time loan to" the first bank "against the assets transferred to it" a sum equivalent to $45 per share; that the assets referred to were to be transferred to the second bank by the first bank as security "for the money [so] advanced" and other obligations of the first bank under the contract; and that the first bank should pay the second bank interest on the debit balance from time to time remaining due from it. In an action brought more than four years later by the second bank against the first bank to recover an unpaid portion of the money so lent by the plaintiff to the defendant, it was *held*, that

(1) The circumstance, that no note was given by the defendant for the loan so made, did not affect its nature as a loan;

(2) The contract did not mean that the loan was to be repaid only out of the proceeds of the defendant's assets so transferred to the plaintiff;

(3) The contract was not ambiguous, and there accordingly was no reason for the introduction of parol evidence to clarify its meaning;

(4) There being no time provided in the contract for repayment of the loan and a reasonable time for repayment having elapsed, there

was no merit in a contention by the defendant that the action had been brought prematurely.

A transaction, whereby a national bank in voluntary liquidation borrowed money for the purpose of making a distribution to its stockholders, was *ultra vires* and void.

Where the lender in the transaction above described paid the amount of the loan directly to the bank's stockholders, it was *held*, in an action by the lender against the bank, that

(1) The corporate entity of the defendant could not be disregarded, and its stockholders regarded as having stood in its stead;

(2) The plaintiff was not entitled to recover the money lent on the principle that, although he could not recover on the void loan contract, he was entitled to a return of what he had parted with on the faith of such contract: that principle was inapplicable because the defendant had not received the money lent and had received no benefit from the loan.

CONTRACT. Writ in the Municipal Court of the City of Boston dated October 5, 1931.

Upon removal to the Superior Court, the action was tried before *Collins*, J. Material evidence is stated in the opinion. The judge denied a motion by the defendant that a verdict be ordered in its favor, and ordered a verdict for the plaintiff in the sum of $400,087.21. The defendant alleged exceptions.

*A. F. Bickford*, (*R. D. Gerould* with him,) for the defendant.

*T. Hunt*, (*J. C. Reilly* with him,) for the plaintiff.

RUGG, C.J. This is an action of contract. The plaintiff's declaration in its final form was in a single count upon an account annexed. It was a count showing a balance due for money lent by the plaintiff to the defendant and not fully repaid, together with interest. The answer of the defendant set up (1) a general denial, (2) payment, (3) that the act of borrowing was "*ultra vires* of the defendant," (4) that there was no loan but an advance of money to be repaid only out of certain assets transferred to the plaintiff by the defendant, and that if the agreement between the parties touching the loan provided otherwise it was due to fraudulent conduct of the plaintiff, (5) that the action is prematurely brought.

The cause of action grows out of an agreement in writing between the parties dated April 12, 1927. The terms of that agreement so far as material to the grounds of this decision are as follows: It recites a vote by the stockholders of the

defendant for its voluntary liquidation and for the transfer of its business to the plaintiff, and consent of the comptroller of the currency to such transfer, and to the continuance of the two offices of the defendant by the plaintiff as its branches. The defendant transfers to the plaintiff its business and good will and the plaintiff assumes the payment of all deposits in the defendant. The defendant covenants to pay to the plaintiff an amount in cash equal to such deposits. To secure the plaintiff for taking over the deposits, and "for the money advanced as hereinafter provided to pay a dividend in liquidation," the defendant agreed to transfer all its assets to the plaintiff, and the latter after examination was to purchase such assets as it desired and to credit the price of such assets against the deposits assumed and "against money loaned by The National Shawmut Bank of Boston to pay the dividend in liquidation as below provided. Interest and commissions in respect of assets taken over will be adjusted as of the date when they are taken over." The plaintiff agreed to pay to the defendant in consideration of the transfer of its business and good will, a sum in cash equivalent to $30 a share on the seven thousand five hundred shares of stock outstanding. "Also, in order that the Citizens National Bank may make an immediate distribution in liquidation of seventy-five dollars ($75.) per share, The National Shawmut Bank of Boston will at the same time loan to the Citizens National Bank against the assets transferred to it as hereinbefore provided a sum equivalent to forty-five dollars ($45.) per share." The defendant agreed to pay the plaintiff four and a half per cent interest on the debit balance from time to time remaining due from it. The plaintiff took over the leases of the defendant and agreed to allow the defendant's liquidating committee free use of the banking rooms and clerical force.

At the trial it was agreed by the defendant that the execution of this agreement was authorized by its board of directors and ratified by its stockholders, and that the consent of the comptroller of the currency had been obtained.

The terms of this agreement are not ambiguous. An express distinction is drawn between the payment by the plain-

tiff to the defendant of a sum in cash equal to $30 per share of its outstanding stock and the loan against assets transferred to it of a sum equal to $45 per share. There is a difference of substance between a cash payment made for a sale of business and good will and a loan of money for a specified purpose against assets transferred by way of security with interest adjustments from time to time. Clearly, such cash payment is not to be repaid, while a loan imports repayment. No note was given for this loan, which amounted to $337,500. That does not affect its nature as a loan. *Mackintosh* v. *Chambers*, 285 Mass. 594, 597. The contention of the defendant that the loan was to be paid solely from the proceeds of its assets transferred to the plaintiff cannot be supported. The words of the agreement do not permit that construction. *Hightower* v. *American National Bank of Macon*, 263 U. S. 351, 358–361. *Scott* v. *Norton Hardware Co.* 54 Fed. Rep. (2d) 1047, 1049–1050. The terms of the contract being clear, there was no ground for the introduction of parol evidence as to its meaning.

There is no merit to the contention that the action is prematurely brought. There was no time set in the contract for the repayment of the loan. A reasonable time has elapsed in view of undisputed facts.

At the trial the evidence was uncontradicted to the effect that the contract was carried out beginning on April 13, 1927, and that assets were transferred and deposits assumed and other terms executed, and that the amount lent by the plaintiff was paid by paying dividend checks drawn on it signed by The Citizens National Bank of Boston in liquidation by its cashier and approved by the chairman of its liquidating committee and made payable to the stockholders of record of the defendant as of June 1, 1927. The checks thus drawn and paid were at the rate of $75 per share on the entire capital stock, $30 of which represented the amount paid by the plaintiff for good will, and $45 of which represented the amount of the loan. A large amount of these checks was paid on June 3, 1927. That the money had been paid over in this way was admitted by the defendant. The amount thus paid and the amount to be

recovered, if the plaintiff is entitled to prevail, are not in dispute.

The defendant contends that this borrowing of money was *ultra vires* of the defendant as a national banking corporation. The plaintiff concedes that the acts of Congress give to national banks no express power to borrow money, but contends that such power is implied at least during the period prior to actually entering upon liquidation on the ground that it may be said that the borrowing was in the usual course of its business. It is settled that in some circumstances a national bank may borrow money and become obligated to repay it. The limits of such power have not been definitely established. It has been held that, where a national bank borrows money in the regular course of its business and uses it in its banking transactions for its own benefit, accountability cannot be avoided and will be enforced. Such borrowing is not in terms prohibited by the national bank act. *Auten* v. *United States National Bank of New York*, 174 U. S. 125. *Aldrich* v. *Chemical National Bank*, 176 U. S. 618. In *Wyman* v. *Wallace*, 201 U. S. 230, a national bank borrowed from the plaintiff in order to pay other creditors in the hope that it might avoid liquidation. The real value of its assets proved not to equal their nominal value and liquidation was necessary. In a suit to establish the liability of stockholders, the defence that the borrowing was *ultra vires* was interposed. It was held that the notes given by the bank were valid. This decision is authority for the proposition that, if a national bank borrows money to pay off its creditors, the lender may recover judgment against the borrower for the amount due on the loan. It is not clear whether this opinion rests on the ground that such borrowing is not *ultra vires*, or that, whether *ultra vires* or not, there is an implied contract to restore the benefit received by the loan.

This review of the cases demonstrates that there is no express grant of authority to national banks to borrow money for any purpose. The decisions of the Supreme Court of the United States on that subject seemingly have been chary of recognizing an implied authority to borrow money

and have restricted that implied authority to the needs of its regular banking business or to the payment of its debts. The national bank act contains careful restrictions upon the payment of dividends and the impairment or reduction of its capital stock. Withdrawal of capital stock is prohibited while banking operations are continued. U. S. Rev. Sts. § 5204. The defendant did not borrow the money here in issue in the ordinary course of its banking business. The transaction of borrowing by the defendant from the plaintiff imported a purpose on the part of the defendant declared in express terms to cease conducting the business of banking, to go into liquidation, to pay its debts and to distribute its capital, or what may remain of it, among its stockholders. The plaintiff knew of this purpose and participated in the execution of the plan to effectuate this purpose. That design has been in large part carried out. There is nothing illegal about it. The national bank act makes provision for the voluntary liquidation of national banking associations by vote of its shareholders owning two thirds of its capital stock. U. S. Rev. Sts. § 5220. That, however, is not carrying on the business of banking. It is the ending of the business of banking. The power to borrow money for the transaction of the business of banking cannot be implied when there is no banking business to be transacted. The avowed purpose of this loan was "in order that the Citizens National Bank may make an immediate distribution in liquidation of seventy-five dollars ($75.) per share" among its stockholders.

That was a borrowing designed not to forward the usual course of the business of the defendant as a national bank, but to extinguish that business. Borrowing by savings and loan associations to pay withdrawing members has been decided to be *ultra vires*. *Standard Savings & Loan Association* v. *Aldrich*, 163 Fed. Rep. 216, 221–224. *Blackburn Building Society* v. *Cunliffe, Brooks, & Co.* 22 Ch. D. 61. In *Bohn* v. *Boone Building & Loan Association*, 135 Iowa, 140, it was held that borrowing to pay off matured shares was authorized on the ground that a matured shareholder was like a creditor rather than a stockholder. That is

quite different from the case at bar, which involves borrowing to pay a liquidating dividend to stockholders. We are constrained to the view that a borrowing of money by the defendant for the purpose specified was *ultra vires* the corporate power of the defendant as a national banking association.

It has long·been settled that *ultra vires* transactions by a national bank are void. *California Bank* v. *Kennedy,* 167 U. S. 362. The latest reiteration of that doctrine, so far as we are aware, was in *Texas & Pacific Railway* v. *Pottorff,* 291 U. S. 245, where, in holding that a national bank had no power to pledge a part of its assets to secure a private deposit, it was said at page 260: "It is·the settled doctrine of this Court that no rights arise on an *ultra vires* contract, even though the contract has been performed; and that this conclusion cannot be circumvented by erecting an estoppel which would prevent challenging the legality of a power exercised."

There is another principle sometimes applied to the defence of *ultra vires.* It was stated in *Central Transportation Co.* v. *Pullman's Palace Car Co.* 139 U. S. 24, 60, in these words: "A contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract." This principle was invoked in *Citizens' Central National Bank of New York* v. *Appleton,* 216 U. S. 196, to hold a national bank liable on its guaranty of a loan made by another national

bank to a borrower who, pursuant to agreement, out of that loan paid his debt to the guaranteeing national bank, such liability being limited to the payment thus made on his debt. In *Rankin* v. *Emigh*, 218 U. S. 27, 35, a case against a receiver involving an *ultra vires* contract of a national bank, the rule was stated in these words: "although restitution of property obtained under a contract which was illegal, because *ultra vires*, cannot be adjudged by force of the illegal contract, yet, as the obligation to do justice rests upon all persons, natural and artificial, if one obtains the money or property of others without authority, the law, independently of express contract, will compel restitution or compensation." This principle has been applied by circuit courts of appeal to cases where national banks have received the benefit arising from an *ultra vires* contract. *England* v. *Commercial Bank of New Madrid*, 242 Fed. Rep. 813. *Compania Occidental de Almacenaje* v. *First National Bank, Del Rio*, 285 Fed. Rep. 333, 335. *Keyes* v. *Security State Bank of Strasburg*, 300 Fed. Rep. 897, 900. *Farmers' & Miners' Bank* v. *Bluefield National Bank*, 11 Fed. Rep. (2d) 83, 85. *Keyes* v. *First National Bank of Aberdeen*, 25 Fed. Rep. (2d) 684. *Kirkman* v. *Farmers' Savings Bank of Boyden*, 28 Fed. Rep. (2d) 857. In *First National Bank of Aiken* v. *J. L. Mott Iron Works*, 258 U. S. 240, with respect to a suit upon a written guaranty executed by a national bank to be responsible for goods furnished a third person, it was said: "In such circumstances, whether the contract is valid or not, the contractor [the bank] is accountable to the contractee, up to the amount of his undertaking, for the proceeds coming to his hands from the contractee upon the inducement of the contract." Full force and effect are given to this principle by our decisions. *Nims* v. *Mount Hermon Boys' School*, 160 Mass. 177. *McLean Co.* v. *Sidebottom*, 277 Mass. 158. *Chapple* v. *Merchants National Bank*, 284 Mass. 122, 142–143.

In our opinion that principle cannot rightly be applied in the case at bar to overcome the defence of *ultra vires*.

The facts disclosed on this record afford no adequate support for the application of the rule that there can be recovery on the ground of an implied contract arising from a benefit to the defendant. The loan here sought to be recovered was not paid by the plaintiff to the defendant. The loan did not go into the possession of the defendant. The amount of it was all paid by the plaintiff directly to the stockholders of the defendant. Those stockholders doubtless were benefited. But the receipt of the money by them did not improve the financial condition of the defendant nor enable it to meet its obligations to its creditors. All its assets were pledged to secure repayment of the loan. This is not a case where the corporate entity of the defendant may be disregarded and the stockholders treated as standing in its stead. Although the financial condition of the defendant is not shown, there was an offer of proof (which was excluded) to the effect that there was outstanding an unsatisfied judgment against the defendant founded on an obligation arising prior to the date of the contract of April 12, 1927. Where no benefit has resulted to the borrower, no recovery can be had on the theory of implied contract. That subject is discussed at large in *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 600–602. See also *Commonwealth Trust Co. of Pittsburgh* v. *First-Second National Bank of Pittsburgh*, 260 Penn. St. 223; certiorari denied, 246 U. S. 675. The case at bar is distinguishable from *L'Herbette* v. *Pittsfield National Bank*, 162 Mass. 137, where recovery was permitted on the ground of benefit to the bank arising from an *ultra vires* contract. The money there in question came into the actual possession of the bank through its authorized agent. That fact was not affected by the circumstance that it was subsequently embezzled. The bank was nevertheless held responsible to the plaintiff. As already pointed out, the present loan did not come into the hands of the defendant, and its assets were in no way at any moment increased by it.

It is not necessary to consider other exceptions argued.

The conclusion is that the plaintiff was not entitled to

prevail on the facts shown, that the direction of a verdict in its favor was error, and that the defendant's motion for a directed verdict in its favor ought to have been granted.

*Exceptions sustained.*