J. C. PENNEY COMPANY *vs.* SCHULTE REAL ESTATE COMPANY, INC.

Worcester.    September 26, 1934. — September 12, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Landlord and Tenant*, Rescission of lease. *Contract*, Validity, Rescission. *Agency*, Agent's duty of fidelity, Agent's knowledge. *Equity Jurisdiction*, Rescission, Laches.

A lease negotiated by an agent of the lessee for the purpose of facilitating a sale of the property to the lessor by one who had employed the agent to procure a purchaser and who paid the agent a commission for so doing, could be rescinded by the lessee upon his discovery of the double employment, in a suit in equity against a grantee of the lessor who knew of the double employment.

Knowledge acquired by an agent while acting for his own benefit in fraud of his principal is not imputed to the principal.

In a suit in equity seasonably brought by the lessee for rescission of a lease procured by his agent for the agent's benefit in fraud of the plaintiff, of which fraud the defendant had notice, the plaintiff did not need to offer to put the defendant *in statu quo;* nor was it a defence that the plaintiff had occupied under the lease for several years and that real estate values had depreciated: the court had power in granting rescission to impose any conditions and to allow any adjustments, required by justice and equity.

Laches was not shown on the face of a certain bill in equity by a lessee for rescission of the lease.

BILL IN EQUITY, filed in the Superior Court on March 2, 1934.

The decrees described in the opinion were entered by order of *Williams,* J.

*G. H. Mason (J. A. Crotty* with him,) for the plaintiff.

*L. E. Stockwell,* for the defendant.

RUGG, C.J. The plaintiff seeks by this suit rescission of a lease of real estate and further incidental relief. The defendant demurred to the bill for want of equity and laches. An interlocutory decree sustaining the demurrer on the ground that facts were not set forth in the bill entitling the plaintiff to relief and a final decree dismissing the bill were entered. The plaintiff appealed from both these decrees.

The allegations of the bill in substance are these: One Frizzell in December, 1927, owned real estate in Gardner. At that time the plaintiff employed one of its directors as its real estate manager, who had responsibility for negotiating all leases for stores for it and upon whose recommendations the plaintiff relied implicitly. This real estate manager or a corporation owned by him was employed by Frizzell to procure a purchaser for his property and Frizzell agreed to pay to such manager a commission in the event of a sale. Pursuant to this employment the real estate manager of the plaintiff interested the Irrose Realty Corporation, a real estate subsidiary of the D. A. Schulte Co., Inc., which agreed to buy the property in question provided Frizzell could get the plaintiff to lease it for twenty-

one years at a rental of $5,600 per year. In order to perfect the sale and motivated by the personal profit thereby to accrue to him, the real estate manager caused the plaintiff to agree to rent the property on the terms stated. Frizzell then conveyed the property to the Irrose Realty Corporation and the lease was executed under date of February 1, 1928. In all these matters the plaintiff was represented by its real estate manager and relied wholly upon him and his special knowledge, and knew nothing of his employment by Frizzell and his consequent interest adverse to the plaintiff as his employer. About four years later the Irrose Realty Corporation conveyed the property to the defendant, another real estate holding subsidiary of D. A. Schulte Co., Inc. The defendant and the Irrose Realty Corporation at all times throughout the negotiations knew that this real estate manager was the trusted agent of the plaintiff in leasing stores for it and was also agent for Frizzell and was to receive a commission if the sale and lease were made, and knew that he was actually paid $2,200 as such commission.

The first purchaser of the property in question secured the plaintiff as lessee by reason of the services of the agent of the plaintiff in charge of leasing real estate for it. Undivided loyalty to the plaintiff was due from that agent. "It is well settled that the agent is bound to exercise the utmost good faith in his dealings with his principal. As Lord Cairns said, this rule 'is not a technical or arbitrary rule. It is a rule founded on the highest and truest principles of morality.' *Parker* v. *McKenna*, L. R. 10 Ch. 96, 118." *Little* v. *Phipps*, 208 Mass. 331, 333. This principle finds illustration in many cases dealing with breaches of the fiduciary obligations of agents. *Quinn* v. *Burton*, 195 Mass. 277. *Sullivan* v. *Tufts*, 203 Mass. 155. *Dzuris* v. *Pierce*, 216 Mass. 132, 135–136. *Isenbeck* v. *Burroughs*, 217 Mass. 537, 541–542. *Lazenby* v. *Henderson*, 241 Mass. 177. *Fullwood* v. *Hurley*, [1928] 1 K. B. 498, 502. *Chicago Title & Trust Co.* v. *Schwartz*, 339 Ill. 184, 194. Upon the allegations of the bill the plaintiff in the transaction as to the lease was not only unrepresented in any proper

sense, but unknown to it the place of its confidential agent was turned over to one under strong temptation to act in a manner adverse to the interests of the plaintiff. When that agent agreed to act for Frizzell in the circumstances alleged, he was by the law shorn of authority to bind the plaintiff by a contract nominally made in its behalf. The plaintiff, upon learning of the double employment of its agent, could rescind the contract. Am. Law Inst. Restatement: Agency, vol. 2, § 313. *Chicago Title & Trust Co.* v. *Schwartz*, 339 Ill. 184.

While this agent of the plaintiff was not directly employed by the defendant, the latter seeks to bind the plaintiff by a contract nominally made in its behalf by one who by his faithless conduct had disqualified himself as agent for the plaintiff and had rendered it impossible for him to bind the plaintiff by the lease. The defendant, on the allegations of the bill, at all times material knew of this double employment. It stands in no better position than the Irrose Realty Corporation or Frizzell, who originally employed the agent of the plaintiff. The fact that the defendant did not itself employ this agent does not render the transaction any the less fraudulent with respect to the plaintiff. It does not minimize his breach of fiduciary duty to the plaintiff.

The knowledge of its faithless agent is not imputed to the plaintiff as principal. The agent was conducting for his own benefit a fraudulent scheme against the interest of the plaintiff and therefore could not in that particular act for the plaintiff. *Innerarity* v. *Merchants' National Bank*, 139 Mass. 332, 333. *Tremont Trust Co.* v. *Noyes*, 246 Mass. 197, 207, and cases cited.

It is not an essential to a suit in equity for the rescission of a contract such as is set forth in the bill to offer to restore that which has been received and to put the parties *in statu quo*. The court has power in entering a final decree to insert whatever conditions, if any, justice and equity may require after a full hearing. *Thomas* v. *Beals*, 154 Mass. 51. *Putnam* v. *Bolster*, 216 Mass. 367, 372. Am. Law Inst. Restatement: Contracts, vol. 2, § 481.

The facts that the plaintiff has had the use and enjoyment of the premises under the lease for several years and that as matter of general knowledge there has been depreciation in real estate values, do not preclude equitable relief. *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1. Equitable adjustment of fair rental of the premises may be allowed if the facts disclosed at the trial require that result. See *Hall* v. *Ryder*, 152 Mass. 528. The case at bar is distinguishable from *Crowley* v. *Holdsworth*, 264 Mass. 303, where reformation of the transaction rather than rescission was required by the facts.

It cannot rightly be ruled that laches on the part of the plaintiff is disclosed on the face of the bill. So long as there is no knowledge of the wrong committed and no refusal to embrace opportunity to ascertain facts, there can commonly be no laches. *Manning* v. *Mulrey*, 192 Mass. 547, 550. *Stewart* v. *Finkelstone*, 206 Mass. 28, 36. *O'Brien* v. *O'Brien*, 238 Mass. 403, 411.

*Interlocutory and final decrees reversed.*