SYDNEY BUCKMAN, trustee in bankruptcy, *vs.* ELM HILL REALTY COMPANY OF PEABODY.

Essex.   April 7, 1942. — June 24, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Corporation,* Officers and agents.   *Fraud.   Unjust Enrichment.*

Substantial discounts upon sales of merchandise between two corporations having a common officer, director and manager who was wholly in control of the affairs of each, which resulted in bankruptcy of the seller corporation and were allowed by it at the instigation of such officer and in furtherance of his purpose to enrich the purchaser corporation, of which he was a large stockholder, at the expense of the creditors of the seller corporation, were fraudulent and could be recovered from the purchaser corporation in a suit by a trustee in bankruptcy of the seller corporation.

BILL IN EQUITY, filed in the Superior Court on April 28, 1939.

The plaintiff appealed from a final decree entered by order of *Hurley,* J.

*H. B. Zonis,* (*S. Buckman* with him,) for the plaintiff.

*J. J. Gaffney,* for the defendant.

DOLAN, J.   This is a bill in equity brought by the trustee in bankruptcy of the Peabody Paint and Wallpaper Company of Peabody to set aside a mortgage, held by the

defendant company, of personal property of the plaintiff's bankrupt, and to recover certain discounts allowed by the Peabody company on the sale of merchandise to the defendant company.

The case was referred to a master, and upon the coming in of his report the judge entered an interlocutory decree directing the master to report a summary of the evidence bearing upon certain questions hereinafter referred to. After this was done an interlocutory decree was entered overruling the defendant's exceptions to the master's report and confirming the report, and a final decree was entered declaring the mortgage null and void and "otherwise" dismissing the bill. The plaintiff appealed from the final decree, being aggrieved solely by the failure of the judge to charge the defendant with the amount of the discounts before referred to.

Material facts disclosed by the report of the master follow: The defendant was incorporated under the laws of this Commonwealth on November 8, 1935. David J. Gordon has been treasurer and a director of the corporation since its organization. He has been its president and general manager since 1936, and is the owner of twenty-five of the fifty shares of stock issued by the defendant. One Freedberg, a brother-in-law of Gordon, was a director of the corporation, owning twenty-four shares of its stock. Anne A. Newburg was the third director, owning one share of the stock. Gordon, as treasurer, director and manager, dominated the other directors and was in "absolute charge of all its affairs." This corporation purchased large quantities of wallpaper, paint, varnish and other materials in the carrying on of its business.

In the latter part of 1936, Gordon, while treasurer and manager of the defendant, conceived the idea of organizing a corporation to deal in paint, wallpaper, building supplies and incidental merchandise of which the defendant was a large user. In furtherance of that idea he caused the Peabody Paint and Wallpaper Company, hereinafter referred to as the Peabody company, to be incorporated in January, 1937, in the manner and for the purposes described in

*Enterprise Wall Paper Manuf. Co.* v. *Gordon, ante,* 1. It is unnecessary to recite all the details of the incorporation again. It is sufficient to say that there were issued to Gordon ninety-four shares of the capital stock, all of which were to be paid for in property, and that he never paid for them in any form. The defendant corporation paid all the expenses of the incorporation of the Peabody company, of which Gordon was a director and treasurer and manager. He "entirely controlled" its affairs, and as "treasurer, director and manager" he sold to the defendant large amounts of merchandise in 1937, 1938, and 1939, with the intent of enriching the defendant at the expense of the creditors of the Peabody company. This was accomplished by giving the defendant large discounts from the sale price. This practice was known and consented to by the other directors of the Peabody company and resulted in the bankruptcy of that company. The merchandise sold by the Peabody company to the defendant was "valued at" $17,815.79, and was billed to the defendant at that price. That was "a fair price for [the] merchandise." A total discount of $6,121.94 was allowed by Gordon and the other directors of the Peabody company on the sale price to the defendant, of which Gordon was the director, treasurer and manager. This was done at a time when the Peabody company was experiencing severe financial difficulties and suffering losses as a result of the prices at which the sales were being made to the defendant. This was known to Gordon and the other directors of the Peabody company. The master found that the discounts in question were improper and that the defendant owed the plaintiff the total amount thereof.

Since no contention is made that that part of the final decree entered by the judge declaring the mortgage from the Peabody company to the defendant "null and void" was erroneous, it is unnecessary to recite the findings of the master with respect to that subject matter.

The evidence that the master was required to report by the judge was a "fair summary of so much of the evidence as is necessary to enable the court to determine questions

of law with respect to the following: 1. Whether the officers and directors of the Peabody Paint and Wallpaper Company severed their connection with that corporation on June 8, 1938, and whether other officers and directors were elected in their stead." The evidence reported is in substance as follows: Gordon testified to the organization of the Peabody company on January 2, 1937, and to the election of himself as treasurer and Anne A. Newburg as clerk, and to their election with one Miller as directors. He further testified that he resigned as its treasurer on June 7, 1938, as set forth in the record of a meeting of the directors held that day, and that one Baker was elected to fill out his unexpired term as treasurer, also as set out in that record. Gordon's certificate for ninety-four shares of the Peabody company was introduced; he had indorsed it in blank under date of July 7, 1938, by his attorney. Similar indorsements appeared on the certificates of Newburg and Miller under the same date. There was no evidence of the resignation of Gordon as president, or of Newburg as clerk, nor evidence of the resignation of either of them or of Miller as a director. A certificate of condition of the Peabody company was filed with the commissioner of corporations and taxation on July 14, 1938, under date of April 11, 1938, in which the respective officers were described as follows: Gordon, president and treasurer and a director; Newburg, clerk and a director; and Miller, a director. The certificate was signed by all three. It was stated therein that the terms of these officers would expire "At next annual meeting or when successors qualify." On June 15, 1938, Gordon as treasurer of the Peabody company signed a check for $300 payable to the order of the Enterprise Wall Paper Company. The check was drawn on the bank in which the Peabody company had carried its banking account. The commissioner of corporations and taxation was never notified of any change in the officers of the Peabody company from the time of its incorporation to the time of the hearings before the master, as required by G. L. (Ter. Ed.) c. 156, § 24. There was a stock certificate numbered 4 and dated July 7, 1938, in the "stock certificate

book" of the Peabody company, in the name of Meyer L. Baker, for ninety-eight shares of stock of the company. There was also a certificate for one share (No. 5) in the name of Elizabeth Baker under the same date, and "a stub of a stock certificate" (No. 6) bearing the name of one Demarais and the same date. None of these persons testified before the master and there was no evidence, except as just before set forth, to show a sale of the shares involved to them. There was no evidence that any other persons were ever elected to the respective offices held by Gordon, Newburg and Miller other than that relating to the election of Baker as treasurer in place of Gordon.

In these circumstances we are of opinion that the contention of the defendant, that the master's finding that during the business life of the Peabody company (it was adjudicated bankrupt March 2, 1939) Gordon, as treasurer and general manager, with the knowledge and consent of the directors, allowed the discounts in question, is not supported by the subsidiary facts found and the evidence reported, cannot be sustained. · The general finding of the master to the above effect is supported by the subsidiary findings and the evidence reported. While there was some evidence that Gordon resigned as treasurer on June 7, 1938, there was on the other hand evidence that he was still acting as treasurer on June 15, 1938. In any event, there was no evidence that he ceased to be president and a director of the Peabody company or that any of the other officers or directors ceased to be such before it was adjudicated bankrupt. No further analysis of the evidence already recited is needed to establish that the general finding of the master, which the defendant attacks, cannot be said to have been inconsistent with his subsidiary findings or with the evidence upon which that finding was based, and hence it must stand. *Dodge* v. *Anna Jaques Hospital,* 301 Mass. 431, 435, 436.

The remaining question is whether the plaintiff is entitled to recover the amount of the discounts to which reference has already been made. The ultimate finding of the master, that the defendant owes that amount to the plaintiff, is supported by the subsidiary facts found by him

which have already been recited. Gordon was director, treasurer and manager of the Peabody company. He "entirely controlled the affairs" of that company. His fellow directors knew of and consented to the giving of the discounts. The master found that the sale price billed by the Peabody company to the defendant represented a fair value for the merchandise sold to it, and that the discounts were improper. There is nothing in the subsidiary facts found by the master that is inconsistent with that conclusion. Gordon was not only treasurer and a director of the defendant corporation since its incorporation but has been president and general manager since 1936. He also owns twenty-five shares of the fifty shares of its stock. He was "in absolute charge of all its affairs"; it was "completely dominated by him." The giving of the discounts was for the purpose of enriching that corporation at the expense of the creditors of the Peabody company. Manifestly the discounts served to advance the interests of Gordon in the defendant corporation, of which he was the largest stockholder. The interests of the buyer corporation conflicted with those of the seller corporation. As a director of each Gordon stood in a fiduciary capacity. *Lazenby* v. *Henderson*, 241 Mass. 177, and cases cited. In these circumstances the case is largely governed by the case just cited in which, at page 180, the court, quoting *Geddes* v. *Anaconda Copper Mining Co.* 254 U. S. 590, 599, said: "The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where a sale is involved the full adequacy of the consideration. Especially is this true where a common director is dominating in influence or in character." Applying these principles to the facts found by the master we are of opinion that the conclusion of the master that the discounts in question were improper was right. The defendant was charged with knowledge of the conduct

of Gordon as its treasurer and director and, having accepted the benefits of the fraudulent transactions in question, became liable therefor. See *Reed* v. *A. E. Little Co.* 256 Mass. 442, 447, 448, and cases cited.

It follows that the final decree entered in the court below must be modified by striking out the direction that the "bill be otherwise dismissed," that is, as to the prayer of the bill for the adjudication of the indebtedness of the defendant to the plaintiff, and by adjudging that there is due to the plaintiff from the defendant $6,121.84, and ordering the defendant to pay that sum, and making appropriate orders for the payment of interest on that sum and for costs. The interlocutory decree appealed from is affirmed, and the final decree as modified in accordance with this opinion is affirmed with costs.

*Ordered accordingly.*