## FALK v. LEVINE et al.

### No. 3377.

District Court, D. Massachusetts.

May 17, 1945.

Titiev & Greenman and Magnus Greenman, all of Boston, Mass., for plaintiff.

Samuel M. Salny, of Fitchburg, Mass., for defendants.

WYZANSKI, District Judge.

The defendants move to dismiss the complaint for failure to state a cause of action. They do not press at this stage their suggestion that the complaint must fail for laches and because of the statute of limitation.

The gist of the complaint is that the plaintiff and the individual defendants entered into a contract for the exploitation of a machine process for manufacturing plastics; that induced by the fraud of the individual defendants the plaintiff in consideration of $2,000 executed releases in favor of the individual defendants and the corporate defendant; and that these releases should be set aside and the contract performed. Obviously at this juncture the question is not whether there is the slightest evidence to support these charges but only whether, if the charges were capable of being supported by evidence, they would justify judicial action.

Looked at more carefully, the complaint opens with allegations of diversity of citizenship between the parties and a state-

ment of the amount in controversy. Par. 1. Paragraph 2 asserts that in 1933 the individual defendants owned all the 100 shares of common stock of the corporate defendant. Paragraph 3 incorporates by reference a contract of May 7, 1935, between plaintiff and the individual defendants. This contract provided that: (I) the individual defendants would (a) make a $5,000 loan to the corporation, (b) rent certain property to the corporation first free and later at a designated rent, (c) handle the corporation's sales first free and later at certain charges, and (d) raise funds for further development; (II) the corporation is to issue a total of (a) 100 shares of no par voting non-dividend paying common stock, one-half to the plaintiff and the other half to the individual defendants, and (b) 100 shares of no par non-voting dividend paying preferred stock, one-third to the plaintiff and one-third to each of the two individual defendants; (III) the plaintiff would give the corporate defendant his knowledge and information for producing plastics and also would secure a competent engineer at the corporation's expense; (IV) all parties agree not to disclose their knowledge about plastics until a certain period has elapsed; and (V) articles sold to New England Novelty, another company owned by the individual defendants, should not be sold without a reasonable profit. Paragraph 4 of the complaint alleges the plaintiff performed his part of the agreement. Paragraph 5 asserts that the individual defendants fraudulently represented that the plastic machine designed according to information given by the plaintiff could not operate. Paragraph 6 states that "the defendants" (apparently including the corporate defendant) arranged for a demonstration of the machine but in furtherance of their scheme caused it to fail to operate properly. Paragraph 7 charges that later the individual defendants fraudulently represented that the business of the corporation was unsuccessful but that if the plaintiff would surrender all his rights against the (three) defendants and execute releases in favor of the defendants that "they" would pay the plaintiff $2,000. Paragraph 8 alleges that the corporate business had in fact been successful. Paragraph 9 asserts that in reliance on the misrepresentations of the individual defendants the plaintiff executed releases in favor of all the defendants for $2,000.

Paragraph 10 says that the misrepresentations were deliberate and with the object of defrauding the plaintiff. Paragraph 11 affirms that upon learning of the fraud he tendered back to the defendants the $2,000. In Paragraph 12 the plaintiff says "he is entitled to a rescission" of the releases, he is entitled to "his stock and to a restoration of all rights as a shareholder," and he offers to return the $2,000. The threefold prayer demands that: (1) upon receiving back the $2,000 defendants deliver his stock in the company; (2) defendants be ordered to account for all profits made by reason of their acquisition of that stock; and (3) "the plaintiff have such other and further relief as is just."

The complaint is perhaps not a model of legal artistry and it seems to conclude with a prayer embodying a transparently false assumption that the plaintiff once had and later surrendered stock in the corporate defendant. But despite these defects the complaint is not demurrable.

Reduced to simple terms the complaint charges that through the fraud of the individual defendants who owned and controlled all the stock of the defendant Commonwealth Plastic Company the plaintiff was induced for $2,000 to execute releases in favor of the individual defendants and the corporate defendant. From the complaint it is not clear whether the "they" who agreed to pay the $2,000 were the three defendants or the individual defendants. See paragraph 2, second sentence, especially first three words and the last clause. Nor is it clear who actually did pay the $2,000. Par. 9. But in any event if the releases were procured by the fraud of the individual defendants the plaintiff is entitled to have a rescission of the releases as against not only the individuals but also the corporate defendant which acted through those individuals. Reed v. A. E. Little Co., 256 Mass. 442, 448, 450, 152 N.E. 918; Buckman v. Elm Hill Realty Co., 312 Mass. 10, 16, 42 N. E.2d 814; Am.Law Inst., Restatement of Agency, § 259. Reed's case offers a clear parallel. A bill in equity charged that the president of a corporation by fraud induced an inventor who had contracts with the corporation regarding patents on his inventions to release rights under those contracts. Upon demurrer to the bill, it was held that there had been stated a good cause of action against the corporation for rescission of the release. "By ac-

cepting the benefits of a fraudulent trans-action", the Massachusetts Supreme Judicial Court said, "the principal adopts his agent's fraud and becomes liable." 256 Mass. at page 448, 152 N.E. at page 920. The relief of rescission which was sought and held available in Reed's case would be appropriate if the allegations of the complaint in this case are proved.

Moreover, if there has been fraud, and if a rescission of the releases is appropriate, then, upon the allegations of the complaint, the plaintiff may be entitled to even further relief. Of course, he would not, as his first prayer asks, receive a restoration of "his shares of stock" because he never had any shares in the corporate defendant. But it is not true as the defendants contend that the plaintiff would be entitled to nothing whatsoever beyond the formality of a rescission of their releases because, in their view, the contract of May 7, 1935, was illegal. The defendants' contention that the contract of May 7, 1935, was illegal is based on their assertions that the contract contemplated the issuance of classes of stock for which the corporation did not then have authority; that there was no assurance that the shareholders would vote to amend their charter, or the Commissioner of Corporations would approve an amendment, so as to permit the creation of new classes of stock or the issue of stock for the trade secrets, services, lease and other assets involved in the contract of May 7, 1935; and that there is no existing authority under the general laws of Massachusetts for the creation of a class of common stock which does not pay dividends.

I do not agree with the defendants' contention that these considerations stand in the way of further relief.

If for the moment we assume that the contract of May 7, 1935, cannot be carried out as written and cannot be reformed, it does not follow that, after a rescission of the releases, the plaintiff would be without any rights on account of what he had contributed (in the form of knowledge concerning the manufacture of plastics or in other forms) to the defendants. If the contract was impossible of fulfillment because of legal barriers, it was nonetheless not a contract to do an act which was a crime or which was immoral. At worst it was an ultra vires agreement which could not be fully performed without the sanction of outside persons, such as corporate officers and the Commissioner of Corporations, and perhaps without a special legislative act authorizing a particular corporation to issue a novel kind of stock. A party to such an ultra vires agreement has a quasi-contractual right to recover the benefits he has conferred. McLean Co. v. Sidebottom, 277 Mass. 158, 159, 160, 178 N.E. 284; Nims v. Mount Hermon Boys' School, 160 Mass. 177, 179, 180, 35 N.E. 776, 22 L.R.A. 364, 39 Am. St.Rep. 467; Eastern Expanded Metal Co. v. Webb Granite & Co., 195 Mass. 356, 81 N.E. 251, 11 Ann.Cas. 631; Standard Button Fastening Co. v. Harney, 155 Mass. 507, 29 N.E. 1148. See Herbert v. Sullivan, 1 Cir., 123 F.2d 477, 478; Am.Law Inst., Restatement of Contracts, § 604; Am.Law Inst. Restatement of Restitution, § 108(e); Williston Contracts, 2d Ed., §§ 1630, 1631. And this right of recovery exists not only against the other party to the contract if he is the one who receives the benefits, but also against any third person who has received the benefits without giving value therefor or changing his position. L'Herbette v. Pittsfield National Bank, 162 Mass. 137, 38 N.E. 368, 44 Am. St.Rep. 354, as explained in National Shawmut Bank v. Citizens' Nat. Bank, 287 Mass. 329 at page 337, 191 N.E. 647. Compare Nowell v. Equitable Trust Co., 249 Mass. 585, 603, 144 N.E. 749. Am.Law Inst.Restatement of Restitution, §§ 17, 157, 204, 205. As applied to this case, these principles mean that if the releases are set aside and if the contract of May 7, 1935, is incapable of performance or reformation, the plaintiff is entitled either (a) to recover from the defendant corporation his secret processes and the profits attributable to them (See Restatement of Restitution, § 205) and to be protected by an injunction against the further use or disclosure of these processes, or, in the alternative, (b) to compensation on a quasi contractual basis on the usual principles of a quantum valebant.

But it should not be supposed that I regard the contract of May 7, 1935, as being so plainly vitiated by the lack of power of Commonwealth Plastic Company to issue the type of common and preferred shares contemplated in that contract that (once the releases are set aside) the plaintiff's only remedy would be to seek a quasi contractual restitution of the benefits he has conferred upon the individual defendants and the transferee whom they selected. In my opinion the plaintiff would be free

to seek as an alternative remedy reformation of the agreement of May 7, 1935, by a court of equity.

The plaintiff may be able to show (1) that the nub of the agreement of the parties was that (a) the plaintiff would give to a joint enterprise his know-how in the plastic field, (b) the defendants would lend $5,000 and arrange for rent, sales service and further capital investment, and (c) the enterprise as a whole would be so conducted that the plaintiff would have one-half of the control and one-third of the profits; that in connection with the third factor of their agreement the parties, under a mutual mistake of law, provided for an issue by Commonwealth Plastic Company of certain types of stock which had not been and perhaps could not be authorized; and (2) that any lawful device (such as, for example, a voting trust of the outstanding 100 shares of common stock under an agreement that the plaintiff should nominate one-half the trustees and receive one-third of the dividends) which gave the plaintiff one-half the control and one-third of the profits would carry out the intended transaction.

■ If the plaintiff can show evidence of that character it may well be that he comes within the rule that courts of equity will reform a written contract where, owing to mutual mistake, the language used therein did not fully or accurately express the agreement and intention of the parties. Canedy et al. v. Marcy, 13 Gray 373, 377; Stockbridge Iron Co. v. Hudson Iron Co., 107 Mass. 290, 319, 320; Franz v. Franz, 308 Mass. 262, 265, 266, 32 N.E.2d 205, 135 A.L.R. 1448; Philippine Sugar Estate's Development Co. v. Government of Philippine Islands, 247 U.S. 385, 389, 38 S.Ct. 513, 62 L.Ed. 1177; Griswold v. Hazard, 141 U.S. 260, 283, 284, 11 S.Ct. 972, 35 L.Ed. 678. Am.L.Inst.Restatement of Contracts, §§ 504, 511. Williston Contracts, 2d Ed., § 1587, especially p. 4429, first full paragraph. In Franz's case, for example, where a husband and wife had the intention in the deed to them to acquire equal shares in certain real estate, but the deed used language prepared by a scrivener which failed to achieve that purpose, the wife was held to be entitled to reformation of the deed. That holding might furnish a precedent not too far removed from the case at bar. However, no such point needs to be decided now. It is enough to say that since the plaintiff could not secure reformation of the contract of May 7, 1935, without first securing a cancellation of the releases he has given the defendants, his attempt to secure that cancellation is not a vain act, as counsel for the defendants contended in his oral argument.

■ Another claim put forward by defendants to show that there is no valid cause of action is that the plaintiff has alleged that before bringing suit he has made tender of only $2,000, not including interest. Where fraud by the defendants is charged the plaintiff is under no obligation, at least before bringing a suit in equity, to tender back a sum of money he has received, much less interest upon that sum. Reed v. A. E. Little Co., 256 Mass. 442, 450, 152 N.E. 918; J. C. Penney Co. v. Schulte Real Estate Co., 292 Mass. 42, 45, 197 N.E. 458; In re Meiselman, 2 Cir., 105 F.2d 995, 999–1000; Am.L.Inst., Restatement of Contracts, § 480(2) (c); § 481; Am.L.Inst., Restatement of Restitution, § 65F; Williston, Contracts, 2d Ed., § 1530. This is not to imply that in a final decree, the equity court may not properly consider the question of interest in ordering a restoration of a status quo. Thomas v. Beals, 154 Mass. 51, 54, par. 2, 27 N.E. 1004. Compare J. C. Penney Co. v. Schulte Real Estate Co., supra; In re Meiselman, supra, 105 F.2d at page 1000, lines 27–30.

■ In conclusion, it should be noted that in this discussion I have considered various types of relief to which the plaintiff might be entitled but which he omitted to mention specifically in his prayers for relief. This omission does not count against the plaintiff under the present Federal Rules of Civil Procedure, 28 U. S.C.A. following section 723c, see especially Rules 8(a) and 54(c). Under these rules, while it is the duty of the plaintiff to give a short and plain statement of his claim and also to demand judgment for the relief to which he deems himself entitled, the test of the complaint upon a motion to dismiss lies in the claim not in the demand. The only issue is whether the claim stated would give the plaintiff a right to any relief, not to the particular relief he demands. Keiser v. Walsh, 73 App.D.C. 167, 118 F.2d 13, 14; Gay v. E. H. Moore Inc., D.C.E.D.Okl., 26 F.Supp. 749, 751, col. 2. See Moore's Federal Practice, vol. I, § 808, p. 557, and 1944 supplement to that page. Measured by that standard this complaint is not demurrable.

Motions to dismiss denied.